JOHN SBARRA, APPELLANT, V. MIDDLE STATES CREAMERIES, INC., APPELLEE.

2 N. W. (2d) 26

FILED JANUARY 23, 1942. No. 31211.

*Frank C. Yates* and *Frank A. Dutton,* for appellant.

*Kennedy, Holland, DeLacy & Svoboda* and *Edwin Cassem, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and YEAGER, JJ.

PAINE, J.

This is an appeal from a dismissal by the district court of a compensation case.

Plaintiff filed a petition for a hearing before the compensation commissioner on December 7, 1934, alleging that on May 14, 1934, while employed as an ice cream maker by the defendant, the plaintiff received personal injuries by slipping on some spilt milk and falling to the cement floor on his right hand and right side, causing a sacroiliac joint injury.

A hearing was had, and on March 12, 1935, the compensation commissioner awarded the sum of $12.80 a week from February 1, 1935, until such disability shall cease, but not to exceed 300 weeks, and that in addition defendant shall provide plaintiff with necessary and reasonable medical treatment and expense. From such award, each of the parties took an appeal to the district court for Douglas county.

The transcript discloses that the trial ended in the district court on July 17, 1935, and a decree was thereupon entered, reversing the award of the compensation commissioner, and dismissing the claim of the plaintiff.

On July 20, 1935, a motion for a new trial was filed by the plaintiff, and the case remained dormant for over five years. On March 11, 1941, the motion for a new trial was called up, and was overruled by the court, and an appeal taken to this court. The errors relied upon for reversal are that the judgment of the district court is contrary to the evidence and not supported by the record.

The facts in the case may be briefly stated as follows: The plaintiff was a seasonal ice cream worker, 41 years of age, who went to work in the spring and would continue at work until September each year. His work was heavy work, consisting principally of handling ten-gallon cans full of cream, weighing about 125 pounds each, from the cooler to the freezer room.

Plaintiff testifies that on May 14, 1934, in walking on an inclined platform, the floor being greasy and slippery, his feet went out from under him and he fell to the floor. He felt a pain in his back right away, and after a few minutes he was told by superintendent Hemingway to go see Dr. Conlin at his office. The engineer took him in a car. He waited in the office about an hour, and Dr. Conlin came in and strapped up his back with adhesive tape, and he was off work about three days. He testified that he stayed at home in bed and kept a hot water bottle on his back; that he made a trip to the doctor's office and he put electric heat on him over the adhesive tape. The third day he went back to work; they gave him a helper, and he continued working steadily until August 28, 1934.

He was then given two and a half day's work in September and on September 22 plaintiff made a complaint that he had more money coming according to the federal code, and he was given a check for $35 for back time in full for all labor claims to date.

In this case Drs. E. C. Henry, Lyman J. Cook, Claude W. Mason and Arthur L. Smith testified for the plaintiff. Drs. Roy W. Fouts, Frank Conlin and James W. Martin testified for the defendant. There is a sharp conflict in this medical testimony, for that of the defendant indicates that falling forward on the hands is not the kind of a fall that places a strain on the sacroiliac joint at all. They explained that ordinarily injury comes to this joint only when a heavy weight is lifted and there is a short torsion or twist in the backbone, and therefore that the fall in the manner testified to by the plaintiff could not bring about any substantial stress or injury to the sacroiliac joint.

It is brought out by the testimony of Dr. Conlin for the defendant company that, when plaintiff came to him for treatment on the day of the fall, he had him stripped down to his waist and found marks over his back where a belladonna plaster had been attached, and plaintiff told him at that time that he had previously had a pain in his back, and it had been weak. Dr. Conlin testified that the plaintiff was tender to the touch over the lumbar region on both sides, particularly the left side. He strapped up his back and applied heat, and he saw him again on May 15 and May 17, and did not see him again until December 7, 1934, after he had been laid off at the end of the work in the fall. He complained at that time of pain over the lumbar muscles, but had no disturbance in walking, and the X-ray examination was negative. Dr. Conlin testified that he saw the plaintiff again on December 9, 11 and 18, and reached the opinion that plaintiff was suffering from lumbago. He said that plaintiff's condition cleared up and he had not seen him since that time.

Dr. Henry, the first medical witness called for the plaintiff, testified that he is a surgeon, and that he had examined the plaintiff twice, and that, except for some bad teeth and his tonsils, his general physical condition was negative. He said there seemed to be a small nodule over his sacroiliac joint that was quite sensitive, and the source of his distress. On cross-examination Dr. Henry testified that the teeth and tonsils were badly infected, and might possibly alone be the cause of a rheumatic or arthritic condition, and he said he recommended the removal of the teeth and tonsils. He testified that the spot which was tender was caused by a bursa sac entirely outside of the joint. Dr. Henry advised that he wear a sacroiliac belt, and said that he would not get well until the focal infection of his teeth and tonsils was cleared up.

Other medical evidence of the plaintiff was to the effect that exhibit No. 2, an X-ray picture, would show a tipping fracture of the fourth lumbar vertebra. Evidence was offered that injury to the sacroiliac joint might be caused if

a body twisted when falling. Certain demonstrations were made in the court chambers upon plaintiff's back when he was stripped to the waist.

The case before us presents simply a disputed question of fact. The fall forward on his hands, as described by the plaintiff, could not produce an injury to the sacroiliac joint, according to the defendant's medical testimony, and it might be so produced according to one of plaintiff's witnesses.

The exhibits are not before this court, as the affidavit of the court reporter then serving shows that they had been lost in the interim of five years between the trial and the ruling on the motion for new trial.

The fact that, when the plaintiff went to the company doctor for first aid treatment and stripped down to his waist, he admitted that his back had been weak prior to this injury, and that he had endeavored to remedy this by wearing belladonna plasters, would indicate that he had been suffering from lumbago in the exact spot in which he claims the injury affected him. Another fact, that he went back to work in three days and worked steadily all through the season until he was laid off about the 1st of September, and then went back and drew additional compensation for his overtime, and did not make any complaint to the company doctor until along in December, is evidence of considerable weight against the allowance of a recovery in this case.

There is no dispute that the plaintiff had a fall, but that the injury for which the plaintiff claims compensation was due to the slipping on the floor is disputed by credible medical testimony.

We have here a disputed question of fact which must be determined in the light of the evidence. There is admittedly credible testimony on both sides, and the question to be decided is whether the plaintiff proved his case.

"In a proceeding under the workmen's compensation law, where the evidence is conflicting, the supreme court upon a trial de novo may consider the fact that the district

court gave credence to testimony of some witnesses rather than to contradictory testimony of other witnesses." *Sherman v. Great Western Sugar Co.,* 127 Neb. 505, 255 N. W. 772. See, also, *Hudson v. City of Lincoln,* 128 Neb. 202, 258 N. W. 398; *Southern Surety Co. v. Parmely,* 121 Neb. 146, 236 N. W. 178; *Cunningham v. Armour & Co.,* 133 Neb. 598, 276 N. W. 393.

Another point presented for reversal is the refusal of the trial court to allow the plaintiff to reopen his main case after a recess of some days had occurred. The law in our state has often been stated that "The request of the plaintiff, who has closed the evidence in chief after the introduction of rebuttal evidence has been reached and is in progress, to be allowed to return to the evidence in chief, open that branch of the trial, and adduce further evidence therein, is within discretion of the trial court, and unless its ruling thereon is accompanied by an abuse of such discretion, it can furnish no reason for a reversal of the judgment." *McClellan v. Hein,* 56 Neb. 600, 77 N. W. 120.

We have examined the evidence *de novo* and find that, while the evidence is in sharp conflict, there is evidence sufficient to support the action of the trial court in dismissing the action on the ground that plaintiff was not entitled to an award.

AFFIRMED.