RICHARD E. DWORAK, APPELLEE, V. CITY OF OMAHA, A MUNICIPAL CORPORATION, APPELLANT.

109 N. W. 2d 160

Filed May 5, 1961. No. 35016.

*Herbert M. Fitle, Bernard E. Vinardi, Irving B. Epstein, Frederick A. Brown, Benjamin M. Wall, Edward M. Stein, and Steven J. Lustgarten,* for appellant.

*Richling & Shrout,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

BOSLAUGH, J.

This is a proceeding under the Workmen's Compensation Act. The appellee, who was the plaintiff below, was an employee of the appellant, the City of Omaha, which was the defendant below.

Following a hearing before a single judge of the Ne-

braska Workmen's Compensation Court, the action was dismissed. The plaintiff waived rehearing and appealed to the district court. The defendant requested a rehearing before the Nebraska Workmen's Compensation Court, and a second hearing was held before the full court. After the second trial an award was entered for the plaintiff, one judge dissenting. The defendant then appealed to the district court which, in effect, affirmed the award made by the full compensation court. The defendant's motion for new trial was overruled and it then perfected this appeal.

The only assignments of error which require consideration are those relating to the sufficiency of the evidence to sustain the award for the plaintiff.

A workmen's compensation case is triable de novo in the Supreme Court, and to entitle the plaintiff to a recovery he must sustain the burden of proving by a preponderance of the evidence that he suffered an accident arising out of and in the course of his employment. Schanhols v. Scottsbluff Bean & Elevator Co., 168 Neb. 626, 97 N. W. 2d 220. The rule of liberal construction of the Workmen's Compensation Act applies to the law, not to the evidence offered to support a claim by virtue of the law. The rule does not dispense with the necessity that claimant shall prove his right to compensation nor does it permit a court to award compensation where the requisite proof is lacking. Gotfrey v. Sakurada, 169 Neb. 879, 101 N. W. 2d 470.

The bill of exceptions in this case consists of thirteen volumes of testimony and exhibits. Much of the evidence is repetitious and cumulative. No attempt will be made to summarize all of the evidence in this opinion. The following is a brief summary of the evidence that is material to the decision in this case:

The plaintiff testified that he reported to the police station at about 7:30 a. m. on February 4, 1957; that roll-call was at about a quarter to eight; that he signed out for his cruiser car but did not leave the station for

about 2 hours because the car was being worked on and was not ready; that he left the station around 10 a.m. and drove out to his territory which was west of Seventy-second Street; that a police callbox was located to the rear of a filling station at Seventy-second and Dodge Streets; that he was required to report each hour on the hour by telephone to the station; that he reported to the station through the callbox at 11 a. m.; that after reporting in he stepped down from a retaining wall that he had been standing on; that his feet went out from under him and he fell backward to the ground, striking the small of his back on the wall; that he picked himself up, dusted himself off, and returned to the cruiser car; that he became nauseated; that he drove west on Dodge Street across Seventy-second Street and turned off into a vacant lot where he vomited; that he had pain in his back and left leg; that he received a radio call to return to the station; that he returned to the station; that he reported to Sgt. Wilson who took him into the office of the chief of police; that the chief ordered him taken to the hospital; that he vomited again while he was at the station; that he reported to Sgt. Elias that he fell backwards in stepping off a wall after reporting at the callbox at Seventy-second and Dodge Streets; that he was taken to the county hospital; and that he later returned home and was then placed in another hospital by his own physician.

The only evidence as to how the accident happened is the testimony of the plaintiff. There is no evidence which directly contradicts the plaintiff's statement that he fell as he stepped down from the wall. However, the plaintiff's testimony as to the events which took place that morning before and after the accident is directly contradicted by the records of the police department and other testimony.

The plaintiff testified that he was delayed in leaving the station for about 2 hours because his cruiser car was being worked on. The garage tickets for the day in

question and the record of the police garage in reference to car No. 30, the car assigned to the plaintiff on that day, contain no record of any work being done on car No. 30 on that day except that the daily gasoline record shows that 10 gallons of gasoline were placed in car No. 30. On cross-examination the plaintiff testified that, probably, he had asked to have the car washed. The evidence is that it took from 10 to 15 minutes for the police garage to wash a cruiser car.

The detail sheet for the change of shifts on the day in question shows that the plaintiff reported in by radio at 7:43 a. m. The evidence shows that this report is intended to mean that the officer reporting is then in service in his cruiser car in the district assigned to him.

The radio log for the day in question shows that car No. 30 reported out of service for a short relief period at 8:20 a. m. at Seventy-second and Dodge Streets. According to the plaintiff's testimony he had not left the station at that time.

The police callbox report sheet for the day in question shows that the plaintiff reported to the station from box No. 94 at 9:11 a. m. The evidence shows that callbox No. 94 was located at Seventy-second and Dodge Streets on February 4, 1957. This was approximately 1 hour before the plaintiff left the police station, according to his testimony, and is the only call from the plaintiff listed on the callbox report for that day.

The radio log also shows that at 10:34 a. m. car No. 30 was notified to come to the morals squad office.

The written report of Sgt. Elias states that at 10:11 a. m. the plaintiff slipped on the ice at Seventy-second and Dodge Streets as he got out of the cruiser car and injured his back.

The plaintiff claims that he sustained a herniated intervertebral disc as a result of the alleged accident on February 4, 1957. The plaintiff has a long history of back trouble. In 1943, while in the military service, the

plaintiff was injured when some telephone poles fell and struck him, knocking him to the ground. Following this injury the plaintiff wore a canvas belt but he testified that the belt was required because of his nervous stomach.

In 1950 the plaintiff was struck while directing traffic. Thereafter the plaintiff wore a steel brace for 3 or 4 months.

In 1952 the plaintiff was injured in an automobile accident while off duty. Later the plaintiff commenced an action to recover damages for his injuries. In his petition he alleged that he had sustained a herniated disc which would require surgery. Several medical reports diagnosed his injury as a "herniated disc lumbar" and "Protrusion 4th L intervertebral disc due to trauma."

Dr. Iwersen, who operated on the plaintiff on October 16, 1957, testified that he found and removed a herniated, degenerated disc between the 4th and 5th lumbar vertebrae. The disc between the 5th lumbar vertebra and the sacrum was also removed in that operation. Dr. Iwersen also testified that herniated discs may occur without trauma and the cause of herniated discs is not known.

Throughout his testimony the plaintiff consistently attempted to minimize his history of back trouble. The plaintiff would have the court believe that his previous injuries were of little significance and produced little or no disability. Yet the record shows that the plaintiff has complained of his back since 1943.

The plaintiff's testimony is filled with evasions and inconsistencies. Much of the record consists of cross-examination of the plaintiff in reference to his testimony at the first hearing and in reference to claims for disability which he made prior to February 4, 1957.

Although the plaintiff's testimony concerning how the accident happened is not directly contradicted, triers of fact are not compelled to accept as absolute verity every statement of a witness not contradicted by direct

evidence. The persuasiveness of evidence may be destroyed even though uncontroverted by direct testimony. Teresi v. Filley, 146 Neb. 797, 21 N. W. 2d 699. Evidence not directly contradicted is not necessarily binding on the triers of fact, and may be given no weight where it is inherently improbable, unreasonable, self-contradictory, or inconsistent with facts or circumstances in evidence. Triers of fact have the right to test the credibility of witnesses by their self-interest and to weigh undisputed parol testimony against facts and circumstances in evidence from which a conclusion may properly be drawn that the parol testimony is false. Marston v. Drobny, 166 Neb. 747, 90 N. W. 2d 408.

Upon consideration of the evidence de novo, we conclude that the plaintiff has failed to sustain the burden of proving by a preponderance of the evidence that his disability is the result of an accident arising out of and in the course of his employment by the defendant. The findings of fact of the district court are not supported by the evidence as disclosed by the record and its judgment must be set aside.

The judgment of the district court is reversed and the cause remanded with directions to dismiss the action.

REVERSED AND REMANDED WITH DIRECTIONS.