LIBBY HLADKY, WIDOW AND SOLE DEPENDENT OF ANTON J. HLADKY, APPELLANT, v. OMAHA BODY AND EQUIPMENT CO., INC., APPELLEE.

109 N. W. 2d 111

Filed May 5, 1961. No. 34941.

*Tesar & Tesar,* for appellant.

*Kennedy, Holland, DeLacy & Svoboda* and *Joseph P. Cashen,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

BROWER, J.

This is an action arising under the provisions of the Nebraska Workmen's Compensation Act. The cause was tried in the Nebraska Workmen's Compensation Court on September 19, 1957, before the Honorable O. M. Olsen, one of the judges thereof. An order of dismissal was entered on October 4, 1957, finding plaintiff had failed to meet the burden of proof sufficient to show with reasonable certainty that the illness, disability, and death of the deceased resulted from an accident arising out of his employment. Plaintiff waived rehearing before the compensation court and appealed directly to the district court for Douglas County.

The district court ordered plaintiff's petition on appeal to be dismissed. A motion for new trial was overruled by the court and thereupon plaintiff appealed.

The question involved in this appeal is whether plaintiff's decedent sustained an accident within the meaning of the Nebraska Workmen's Compensation Act, or whether any injury of the decedent was caused by sickness or by mere exertion no greater than that ordinarily incident to the employment.

The statutory law governing this question is set out in the Workmen's Compensation Act in section 48-151,

R. R. S. 1943. Subsection (2) of this section reads as follows: "(2) The word accident as used in this act shall, unless a different meaning is clearly indicated by the context, be construed to mean an unexpected or unforeseen event happening suddenly and violently, with or without human fault, and producing at the time objective symptoms of an injury." Subsection (4) thereof, so far as here material, is as follows: "(4) The terms injury and personal injuries shall mean only violence to the physical structure of the body and such disease or infection as naturally results therefrom. * * * The terms shall not be construed to include disability or death due to natural causes but occurring while the employee is at work."

This court has adopted certain rules in construing and applying these subsections in similar cases arising under the Workmen's Compensation Act. They have been stated repeatedly. Jones v. Yankee Hill Brick Manuf. Co., 161 Neb. 404, 73 N. W. 2d 394; Feagins v. Carver, 162 Neb. 116, 75 N. W. 2d 379; Murray v. National Gypsum Co., 160 Neb. 463, 70 N. W. 2d 394; Eschenbrenner v. Employers Mutual Casualty Co., 165 Neb. 32, 84 N. W. 2d 169; Schanhols v. Scottsbluff Bean & Elevator Co., 168 Neb. 626, 97 N. W. 2d 220. They are set out in Feagins v. Carver, *supra,* as follows: "A compensable injury within the Workmen's Compensation Act is one caused by an accident arising out of and in the course of the employment.

"An accident within the Workmen's Compensation Act is an unexpected and unforeseen event happening suddenly and violently and producing at the time objective symptoms of injury.

"In order to recover, the burden of proof is upon the claimant in a compensation case to establish by a preponderance of the evidence that personal injury was sustained by the employee by an accident arising out of and in the course of his employment.

"Mere exertion, which is no greater than that ordi-

narily incident to the employment, cannot of itself constitute an accident, and if combined with preexisting disease such exertion produces disability, it does not constitute a compensable accidental injury.

"An award of compensation under the Workmen's Compensation Act may not be based on possibilities, probabilities, or speculative evidence.

"The rule of liberal construction of the Workmen's Compensation Act applies to the law, not to the evidence offered to support a claim by virtue of the law. The rule does not dispense with the necessity that claimant shall prove his right to compensation within the rules above set forth nor does it permit a court to award compensation where the requisite proof is lacking."

Plaintiff's deceased husband Anton J. Hladky was 67 years of age. He had been employed at the defendant's body assembling plant in Omaha, Nebraska, for about 5 years prior to November 2, 1956. Previous to that date he had been engaged in grinding corners on truck bodies. On that day he was assigned by defendant's supervisor to the task of operating a small airpowered hammer riveting gun. It was used in the riveting of floorboards to truck beds manufactured by defendant. The racks or beds were placed on stands and the operator of the gun would stand upon the bed and operate the gun while another workman would "buck" the rivets from underneath. The workmen would change off between these two jobs every other truck bed. It took generally 1 minute on a small bed and up to 20 minutes on a large bed. The deceased had never done this work before. He was assigned to the job because they were short-handed that day. He worked at this riveting throughout the day. On arriving home he was very nervous, shaky, nauseated, and ill. His wife testified that he went to bed, took aspirin tablets, and that she rubbed his back and stomach. The next day was Saturday. They did not work on Saturday or Sunday. On Monday he went back to work and was placed on the same job.

He said the riveting with the airhammer shakes you from your "ears to your toes." He complained to the boss but the boss said it would be good for his rheumatism. Monday evening at the conclusion of his work he was sick and shaky and could hardly walk. On Tuesday he told the boss he couldn't do that work and he was employed the rest of the week putting on washers. He did not again use the rivet gun. He continued to have shaking of his feet and legs, and felt sick. The following Monday when he tried to get up he fell down and could not stand up as his legs gave away. He went to see Dr. Zarbano. After coming home he was still sick. On November 12, 1956, he was taken to St. Catherine's Hospital where his condition became progressively worse and paralysis developed. On February 6, 1957, he was taken to the Douglas County Hospital. There he died on March 21, 1957.

Anton J. Hladky gave his testimony by deposition before his death. The evidence does not describe anything that might be termed an accident within the meaning of the cited portions of section 48-151, R. R. S. 1943. In fact it tends affirmatively to show there was no such accident. He testified as follows: "Q. What, if anything, did you notice on November 2nd, when you first started using the rivet gun? A. Well, that was on a Friday that I riveted. And it was on the small ones and then Monday we started in on the big ones and I worked only on two of them and I quit. Q. Nothing happened as far as your working—all you did was just rivet; is that right? A. Yes, sir. Q. You didn't fall off of the rack or anything, did you? A. No. Q. You didn't slip while you were up there on the rack? A. No. Q. But this is something that came on gradually? A. Yes. Q. In other words, you first felt it on November 2nd; is that right? A. I know how it happened—it shook me up, but the other guys was there so long and nothing happened. Q. After Friday, you were off Saturday and Sunday? A. Yes. Q. And you went back

to work on Monday? A. Yes. Q. And you used the riveter on Monday? A. Yes. Q. Then on Tuesday, from then on all you did was put washers on? A. Yes; I just put washers on. Q. And that following week you were putting washers on, you still didn't feel too good? A. No. Q. Then it was on the following Monday that you went to the doctor, Dr. Mnuk? A. Yes. Q. When you got back to your house after seeing the doctor you had pains in your stomach; is that correct? A. Yes. Q. You were pretty sick? A. Yes. Q. That was on Monday? A. Yes."

Thereafter he again testified on cross-examination as follows: "Q. You didn't slip or trip or anything while you were out there at work? A. No. Q. You never fell? A. No. Q. And you never had any accidents that you can remember? A. No." There was no other testimony had with respect to what happened during the period when Hladky was working.

After the deceased went to work with the airhammer on Friday, November 2, 1956, there is no testimony that while working he complained to anyone. He did experience trouble after going home and was nervous, shaky, went to bed, took aspirin, and his wife rubbed him. On Monday he went back to work. Again he worked through the day. The next day he gave the boss the airhammer and began putting on washers and did lighter work. He stayed on the job the rest of the week. He did not go to the doctor until the following Monday. There is no testimony of anyone else as to any unusual happening. There is his own testimony that he did not slip; that he did not fall; and that he had no accident. We cannot under these circumstances find that he had an accident. We cannot award compensation unless there was one.

Over half of the bill of exceptions is taken up with medical testimony. The plaintiff introduced in evidence voluminous hospital reports, and summaries and statements from four physicians, the purport of which was

that the deceased's cause of death was anterior spinal artery thrombosis or some similar condition. Most all of them said they believed the vibrations of the airhammer aggravated the decedent's condition.

On the other hand the defendant introduced as a witness a doctor who was a pathologist and who had performed a post mortem on the deceased. He testified and was cross-examined at length. A detailed report was given. He said the autopsy showed conclusively the decedent's ailment was not that given in these doctors' statements; that it was caused by a disease presently designated as Guillain-Barre syndrome; that it had affected the entire spinal cord; and that in his opinion it was not possible for it to have been in any way caused or its course affected by trauma or the vibrations of the airhammer on the date of November 2, 1956. In this opinion he was joined by another doctor, a neurologist, who was present when the autopsy took place.

We do not think it is necessary for this court to decide which theory was correct. Whichever was true his condition was not caused by an accident within the meaning of the Workmen's Compensation Act. Neither was it caused by exertion which was greater than that ordinarily incident to the employment. Even if such ordinary exertion combined with a pre-existing disease produced disability, it is not under that act compensable.

It follows that the judgment of the district court must be affirmed at appellant's costs.

AFFIRMED.