RUDY KLENTZ, APPELLANT, V. TRANSAMERICAN FREIGHTLINES, INC., APPELLEE.

112 N. W. 2d 405

Filed December 22, 1961. No. 35054.

*John Stewart Barrett,* for appellant.

*Cassem, Tierney, Adams & Henatsch,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

SPENCER, J.

This is a proceeding under the Workmen's Compensation Act. The appellant, Rudy Klentz, hereinafter called the plaintiff, was an employee of the appellant, Transamerican Freightlines, Inc., hereinafter called the defendant.

The action was first tried before one of the judges of the Nebraska Workmen's Compensation Court. After dismissal, it was heard on rehearing before the entire court, and again dismissed. On a review by the district court in an error proceeding, the judgment of the compensation court was affirmed and the proceeding dismissed. Plaintiff perfected his appeal to this court.

Plaintiff states that "about a couple minutes to 6 before quitting time" on Friday night, August 29, 1958, while in the employ of the defendant as a freight handler, he was assisting two other employees to load a crated motor weighing about 900 pounds. He claims while he was pulling, trying to turn the crate, he "slipped and twisted, and it felt like somebody hit me behind my back." He made no complaint at the time to anyone. The men quit work after the crate was loaded, and the plaintiff went home. He did not work on Saturday or Sunday, and Monday, being Labor Day, was a

holiday. On Tuesday morning, when he was supposed to report for work, he called the employer and merely stated his back was hurting and he would not be at work. He did not say how he hurt his back or make any claim of an injury to the employer at this time. He remained away from work for 2 weeks. When he returned to work the third week, he mentioned his injury to his superior and was sent to the doctor by the employer. The doctor X-rayed him and made a diagnosis of pulled muscles pinching a nerve, and prescribed a corset. Plaintiff then returned to work. Plaintiff's testimony is then as follows: "Q. And how long did you work after you returned to work, from the first time you returned? A. Approximately seven months. Q. And that took you up to what date? A. To around the 1st of May. Q. And you laid off again the 1st of May; is that correct? A. Yes, because I had—I took two weeks vacation. I had one week coming with pay, and I asked him for another week because it was paining me so bad and I thought if I rested two weeks maybe it would go away, but it didn't. Then I was supposed to return to work, and I asked for two more weeks off on account of my back. Then I returned to work and worked a week and a couple days and I couldn't stand it and I laid off a week, and then I worked a week and a couple days and I couldn't stand it, and finally I just gave up. Q. Did you see a doctor during this period of time? A. No, I didn't. Q. When did you see a doctor, if you recall? A. Sometime in July I went back to him again. Q. When was the last date you worked for Transamerican at that particular time? A. The last time I worked for them? Q. Yes, the last day? A. 24th of June."

After leaving defendant's employ he did some part-time work for a filling station. He returned to defendant's employ on January 18, 1960. At the time of the hearing he was still in defendant's employ and his pay

was $2.65 an hour. He had received $2.47 an hour in August of 1958.

The last time the plaintiff had seen a doctor previous to July of 1959 was December 8, 1958. The plaintiff gave two signed statements concerning the origin of his sore back. In a statement given September 30, 1958, the plaintiff said in part: "* * * I noticed a pain in my back. It felt as if something gave loose on the left side near the belt line. I did not slip in any way nor did I fall or stumble * * *. I was doing my normal duties connected with my job * * *." In the statement taken on July 8, 1959, he said, among other things: "Since my accident on Aug 29 1958 I have had several times when I have re-hurt my back by doing heavy lifting or by twisting my back. These times have occurred both at home and at work but most of the time at work."

In his hearing before the Nebraska Workmen's Compensation Court en banc, plaintiff testified, in response to a request for an explanation by one of the compensation court judges as to the statement "I did not slip in any way nor did I fall or stumble," as follows: "Now, is there any explanation you can give us for that statement? THE WITNESS: Yes. Before I signed that, when I read that I was sitting on my bed when I told Mr. Cox, I says, 'I did slip.' Well, he said, 'That ain't so important, we will get the main things.' I remember mentioning that to Mr. Cox before I signed that."

Mr. Cox, the adjuster, categorically denied plaintiff's testimony and testified that the statement was not taken at the plaintiff's home but was actually taken at the Transamerican Lines docks while the plaintiff was on the job. Plaintiff's testimony would indicate he had returned to work at least a week before September 30, 1958. Plaintiff returned to the stand after Cox testified and did not deny that the statement containing the questioned language was given at the defendant's docks

as testified by Mr. Cox. Plaintiff's attempted explanation is far from satisfactory.

There is some evidence that the plaintiff had an extensive house remodeling project on during the period. Mrs. Klentz testified the work was started in November 1958, and completed in May 1959. Plaintiff, however, denies doing any of the work, claiming that it was done on contract by the contractor.

The medical testimony consists entirely of reports by letter made to the Travelers Insurance Company or plaintiff's counsel, which were received in evidence by stipulation. The history recitation in Doctor Iwersen's letter is obviously in error in some important particulars, such as seeing a doctor 2 days after the alleged injury. Doctor Iwersen made an examination on July 6, 1959, but did not treat the plaintiff. He diagnosed a chronic low back strain at the time of the injury, and said: "The physical examination is essentially negative today and there are no objective symptoms present. * * * X-rays show degenerative changes in the lumbar spine which account for some of his difficulty."

After plaintiff left defendant's employ, he visited the doctor who had originally examined him. This doctor, writing as of July 21, 1959, said the history would suggest a disc herniation and stated that plaintiff had been advised to return to limited work on July 20, 1959. He saw plaintiff again on September 14, 1959. A myelogram was performed September 14, 1959. This showed a large hourglass defect at the fourth interspace more on the left side, and the first sacral nerve root sleeve did not fill out normally on the left side. The doctor stated the findings did not warrant surgical intervention so he was treated conservatively and advised he might be doing some work, but was told to avoid heavy lifting. These findings appear to be substantiated by another doctor who examined the myelogram and, in a letter to plaintiff's counsel dated October 2, 1959, said:

"The findings of the Myelogram are those of a minimal type of herniated disc."

Plaintiff was paid $43.71, compensation for the period in September 1958, and medical expenses for that period were paid for him in the sum of $16. Plaintiff's claim is that his disability after May 1, 1959, is the result of the injury sustained August 29, 1958.

There are well-established rules of law which are controlling in the situation presented. An appeal to this court in a workmen's compensation case is considered and determined de novo upon the record, and to entitle the plaintiff to a recovery he must sustain the burden of proof by a preponderance of the evidence that he suffered an accident arising out of and in the course of his employment. Dworak v. City of Omaha, 172 Neb. 209, 109 N. W. 2d 160.

A compensation award cannot be based on possibilities or speculation, and if an inference favorable to the claimant can only be reached on the basis thereof, then he cannot recover. McCauley v. Harris, 164 Neb. 216, 82 N. W. 2d 30.

The rule of liberal construction of the Workmen's Compensation Act applies to the law, not to the evidence offered to support a claim by virtue of the law. The rule does not dispense with the necessity that the claimant shall prove his right to compensation by a preponderance of the evidence, and it does not permit a court to award compensation where the requisite proof is lacking. Feagins v. Carver, 162 Neb. 116, 75 N. W. 2d 379.

Triers of fact are not compelled to accept as absolute verity every statement of a witness not contradicted by direct evidence. The persuasiveness of evidence may be destroyed even though uncontroverted by direct testimony. Dworak v. City of Omaha, *supra*.

In Crable v. Great Western Sugar Co., 166 Neb. 795, 90 N. W. 2d 805, we said: " ' "It is obvious that the evidence in the instant case is irreconcilable and in direct conflict. This being true, this court will consider the

trial court's observation of the witnesses and their manner of testifying, and also that the trial court must have accepted one version rather than the opposite." See, also, Sbarra v. Middle States Creameries, Inc., 140 Neb. 813, 2 N. W. 2d 26; Bolen v. Buller, 143 Neb. 237, 9 N. W. 2d 204. This applies to the compensation court where the matter was tried on rehearing and from which appeal was taken to the district court.' "

It was the conclusion of the compensation court judge who first heard the plaintiff's claim, and the unanimous judgment of the compensation court en banc, that the plaintiff had failed to prove that the symptoms and disability of which he complained after May 1959, were the result of the alleged accident on August 29, 1958.

We observe that it is just a little unusual for an employee to fail to mention an injury at the time of its happening, even to fellow employees. It is even more unusual to take time off because of an injury and not give that as a reason to the employer until after returning to work 3 weeks later. The doctor diagnosed plaintiff's ailment in September of 1958 as a pulled muscle, and compensation was paid for 1 week and 2 days, even though a question may have been present as to whether compensation was allowable. Plaintiff, however, returned to work immediately after he saw the doctor, and remained on the job without complaint for 7 months. The record is devoid of any evidence that he lost even 1 hour of time after he returned to work in September of 1958, because of his condition. The medical evidence is less than helpful to support his present position.

Applying the rules set out above to the instant case, we must conclude that the Nebraska Workmen's Compensation Court was correct in its conclusion that the proof adduced is not sufficient to prove by a preponderance of the evidence that the symptoms and disability of which the plaintiff complains from and after

May 1959, are the result of the accident of August 29, 1958.

For the reasons given above, the dismissal of the appeal entered by the district court was in all respects correct and is affirmed.

AFFIRMED.