GAIL PRUITT, APPELLANT, V. MCMAKEN TRANSPORTATION
CO., ET AL., APPELLEES.
122 N. W. 2d 236
Filed June 21, 1963.   No. 35473.

Cropper & Cropper, Weinberg & Fiedler, and Robert
G. Decker, for appellant.

Joseph H. McGroarty, Larry E. Welch, and Gross,
Welch, Vinardi, Kauffman, Schatz & MacKenzie, for
appellees.

Heard before WHITE, C. J., CARTER, MESSMORE, YEAGER,
SPENCER, BOSLAUGH, and BROWER, JJ.

SPENCER, J.

This is a proceeding under the Workmen's Compensation Act. The appellant, Gail Pruitt, hereinafter called the plaintiff, was and since August 1959, had been an employee of the appellee, McMaken Transportation Co., hereinafter called the defendant.

The action was first tried before one of the judges of the Nebraska Workmen's Compensation Court. After dismissal, it was heard on rehearing before the court en banc and again was dismissed. On review by the district court, the judgment of the compensation court was affirmed and the proceeding was dismissed. Plaintiff, alleging the findings of fact are not supported by the evidence, perfected his appeal to this court where it is to be considered and determined de novo upon the record. § 48-185, R. R. S. 1943.

Plaintiff for several years has had a history of back trouble. In 1954 he sustained an injury to his back and a myelogram was made but the results do not appear in this record. On November 2, 1959, he sustained a back injury when lifting a heavy roll of steel cable.

In his original petition, plaintiff alleged that the injury of November 2, 1959, was aggravated on February 17, 1961, when he picked up a box at defendant's terminal. This resulted in his present disability. This petition, however, was amended at the hearing before the single compensation judge to allege that the sole cause of his disability was the alleged incident of February 17, 1961.

Plaintiff was a dockworker in defendant's employ on February 17, 1961. On that day, he was unloading cardboard boxes from a trailer. On the rehearing before the court en banc, he testified: "Q- Can you give the Court more details concerning how you hurt your back? What you did, what you were doing? A- I was unloading a trailer, and unloading of the trailer, that is take the freight on and off and put it on the four-wheel cart and remove it from the trailer onto the dock, and I

was bent over lifting this one box. It weighs anywhere from 80 to 85 pounds, this box was a little heavier on one end than it was on the other and I turned and put it on the cart, I was in kind of a bind or a twist, and I got a pain across my back like as if somebody hit me with a board."

The box was about 3 feet long, 2 feet wide, and 2 feet thick. In further describing what happened, the plaintiff testified: "Q- Well, go through and tell the Court what motions you went through as you lifted the box, so the Court will have a complete understanding. A- Well, I kind of pulled the box back a little bit so I could kick it with my knees so I could get my hands underneath it, so I was a little bit off balance. There is no doubt about it, so I kicked it with my knees so I could get my fingers under it some way. I lifted it up like that and it was a bad floor in the trailer. Q- It was a bad floor? A- Yes. Q- How do you mean it was a bad floor, sand on it? A- No, there was just the normal dirt in the trailer as far as that goes, but it had bad spots in the floor. There was a few holes in it. Some of it had been repaired with plywood. Q- Do you know whether or not where the box was that you picked up, what the condition of the floor was there where you were standing? A- Well, this was a broken board. It wasn't broken completely out, but when you stepped on it it would give. They put some awful heavy freight in those trailers and the floors don't last too long. Q- Well, all right, now as you rose, just tell the Court exactly what happened. A- Well, I was standing on this weak board. It was broke, but it was still there. I sunk down in it. I picked the box up. I was on a twist. I was a little bit off-balance. Q- All right, now which way did you turn? A- I turned to my right. The box was up against what would be my left-hand side of the trailer. You go into the trailer from the back." Plaintiff testified he did not slip, that he completed the move-

ment, and that he deposited the box on the four-wheel cart.

Much of the record on rehearing is devoted to cross-examination about the fact that no mention was made of a loose or broken board in the trailer floor at the hearing before the one judge, nor does any such statement appear in the history given to the medical examiner. Plaintiff's explanation for the omission is as follows: "Q- You didn't tell the Court or anybody about this until this minute, did you? A- Nobody ever asked me about it before."

Included in the cross-examination is the following: "Q- I will ask you this again. 'Q. You didn't slip, trip, or fall or anything like that? A. No, sir.' Now, you told me that, didn't you? A- I didn't slip, trip, or fall, no. Q- When I said, 'You didn't slip, trip, or fall, or anything like that,' you didn't feel that this board that you are talking about, had anything to do with this accident at the time, did you? A- Well, I didn't really think about it. Q- And you don't really think about it now, do you? A- I do too. Q- When did it first come to your attention that that might have happened? A- After I read that. (The transcript of the first hearing.) Q- How long ago was it when you read this? A- I read it last week. Q- And that is the first time that you ever thought that this breaking of the board or I wouldn't call it breaking of the board but the weak-board had something to do with this? A- I tried to rake my mind why they wouldn't pay the doctor and hospital bill."

Plaintiff argues that the verity of the testimony should have been carefully weighed by the compensation court en banc and by the district court, since it was uncontroverted, and that the apparent inconsistency because this testimony had not been previously elicited should be "instantly melted away by the warm breeze of an explanation." The metaphor is very apt when we consider the hypnotic effect of a warm breeze. Courts must apply a rigid test to explanations offered for previous

omissions when material facts are elicited for the first time in a subsequent hearing. We do not deem it necessary to consider the applicability of the rule enunciated in Carranza v. Payne-Larson Furniture Co., 165 Neb. 352, 85 N. W. 2d 694, and cases therein cited to determine this case. We do, however, say that triers of fact are not compelled to accept as absolute verity every statement of a witness not contradicted by direct evidence. The persuasiveness of evidence may be destroyed even though uncontroverted by direct testimony. Klentz v. Transamerican Freightlines, Inc., 173 Neb. 53, 112 N. W. 2d 405.

Giving the plaintiff the full benefit of every inference apparent in his revised testimony, it is evident that he has failed to prove a compensable accident arising out of and in the course of his employment, as defined by our law.

Section 48-151, R. R. S. 1943, defines an accident as follows: "(2) The word accident as used in this act shall, unless a different meaning is clearly indicated by the context, be construed to mean an unexpected or unforeseen event happening suddenly and violently, with or without human fault, and producing at the time objective symptoms of an injury." Subsection (4) of this same section, so far as material herein, is as follows: "(4) The terms injury and personal injuries shall mean only violence to the physical structure of the body and such disease or infection as naturally results therefrom."

The law is well established in this jurisdiction that to entitle the plaintiff to recover he must sustain the burden of proof by a preponderance of the evidence that he suffered an accident arising out of and in the course of his employment. See Dworak v. City of Omaha, 172 Neb. 209, 109 N. W. 2d 160.

Has the plaintiff proved an accident arising out of and in the course of his employment? His testimony is: "Well, I was standing on this weak board. It was broke, but it was still there. I sunk down in it. I picked the

box up. I was on a twist. I was a little bit off-balance."
His foot sank before he started to lift. There was no
unusual occurrence after he started lifting except the
unexplained pain in his back. In the place where
he·was working, it was usual to twist the body to lift
the box to the cart. Plaintiff, in his brief, suggests that
the "sudden and violent sinking of the board" produced
the injury. There is no testimony in this record that the
sinking was sudden or violent, but only that the board
did give when plaintiff stepped on it. Even so, plaintiff's
foot had come to rest and he was standing on the board
before he started to lift.

This appears to be a case where the exertion incident
to his occupation resulted in the back difficulty. We
are committed to the rule of law in this jurisdiction
that mere exertion which is no greater than that ordi-
narily incident to the employment cannot of itself con-
stitute an accident. Green v. Benson Transfer Co., 173
Neb. 226, 113 N. W. 2d 61. Even if exertion, combined
with preexisting disease or injury, produced the disabil-
ity, it does not constitute a compensable accidental in-
jury. Hladky v. Omaha Body & Equipment Co., 172
Neb. 197, 109 N. W. 2d 111.

To hold for the plaintiff in this case would be to as-
sume possibilities and probabilities which cannot be
fairly drawn from the evidence. As we said in Ander-
son v. Cowger, 158 Neb. 772, 65 N. W. 2d 51: "A com-
pensation award cannot be based on possibilities or prob-
abilities but must be based on sufficient evidence that the
claimant incurred a disability arising out of and in the
course of his employment."

Plaintiff argues that because the Workmen's Com-
pensation Act is remedial in nature and its purpose is
to do justice to workmen, a liberal construction should
be applied in determining whether there was an acci-
dent arising out of and in the course of employment
which would give rise to compensation. We have re-
peatedly said that in this jurisdiction the rule of liberal

construction of the Workmen's Compensation Act applies to the law, not to the evidence offered to support a claim by virtue of the law. The rule does not dispense with the necessity that the claimant shall prove his right to compensation by a preponderance of the evidence, nor does it permit a court to award compensation where the requisite proof is lacking. See Klentz v. Transamerican Freightlines, Inc., 173 Neb. 53, 112 N. W. 2d 405.

For the reasons given, the judgment of the district court affirming the order of the compensation court in the dismissal of plaintiff's petition was correct and is affirmed.

AFFIRMED.