OSCAR RUNYONS, APPELLANT, V. OTTO G. MAVIS & SONS, INC., A NEBRASKA CORPORATION, APPELLEE.
128 N. W. 2d 596

Filed May 22, 1964. No. 35719.

Marks, Clare, Hopkins & Rauth and Charles I. Scudder, for appellant.

Herbert E. Story and Robert C. Oberbillig, for appellee.

Heard before WHITE, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

MESSMORE, J.

This is a workmen's compensation case. The appellant, Oscar Runyons, hereinafter called the plaintiff, was in the employ of Otto G. Mavis & Sons, Inc., a Nebraska corporation, appellee, hereinafter called the defendant. The action was first tried before one of the judges of the Nebraska Workmen's Compensation Court. After dismissal, it was heard on rehearing before the Nebraska Workmen's Compensation Court en banc, and again was dismissed. On review by the district court, the judgment of the compensation court was affirmed and the proceedings dismissed. The plaintiff perfected appeal to this court where the cause is considered de novo upon the record.

The plaintiff testified that he was 49 years of age; that on or about September 18, 1962, he was in the employ of the defendant who was engaged in the building of houses; and that he was employed as a common laborer. He further testified that he had an accident on September 18, 1962, which happened between 3:20 and 3:25 p.m.; that Mr. Mavis called him and told him to take some step boards from the basement upstairs; that the boards were about 10 feet long and the dimension was 1 x 8; that there were two power saws in the basement, both of which were in operation; that there

were blocks one-half to one inch in diameter lying on the floor; that to get the boards from the basement to the porch, the plaintiff had to walk out to the driveway, then walk outside the garage and go up some stairs to the porch; that he reached down, picked the boards up and started to lay them on his shoulder; that he had them in place and was holding onto them with both hands; and that he started to make a turn to the right and stepped back with his right leg onto a block which caused him to lose his balance. He fell to his knees, and had pain in his back and leg. He put the boards down, then picked up two of them and put them on the porch. The boards weighed between 100 and 125 pounds. He went back to the basement and took the third board and laid it on the other two which were on the porch. He then went out to the driveway and started sweeping, and Mr. Mavis told him to go. This was at 3:30 p.m. He went to a hotel where he lived. He called Mr. Mavis at his home about 5:30 p.m., and told him that he had hurt his back and would not be able to go to work the next day. Mavis told the plaintiff to check into a hospital which he was unable to do for a couple of days. He went to the Douglas County Hospital and from there to see Dr. Kratochvil at his office. The doctor examined him and gave him some tests and prescriptions for medicine. He later went to St. Catherine's Hospital where he stayed 26 or 27 days.

On cross-examination the plaintiff testified that he might have told someone that he stooped over and felt pain in his back, but he could not remember to whom he told it. He was asked if he told a man from the insurance company that on September 18th he went to pick up some boards and felt something snap in his back, and he said he might have. He admitted that he signed a statement.

Dr. Bernard Kratochvil testified that he saw the plaintiff September 20, 1962, at his office; and that the plaintiff complained of back pain, radiation in both ex-

tremities, more severe in the right than in the left. The doctor asked the plaintiff what happened, and he said he got a pain while working; and that he bent over and got a pain. Later the doctor asked the plaintiff what happened and he said he was working on a construction job; that he lifted 100 or 150 pounds of wood or something over his head; and that he stepped back and hit a block or piece of wood and it caused him to lose his balance and he got pain in his back and leg. The plaintiff had had an operation in West Virginia in 1950, which apparently was a laminectomy, a removal of bone, because of a herniated intervertebral disk. The plaintiff said that he worked for about 12 years after that without any difficulty. When the plaintiff was examined at the doctor's office, the doctor found muscle spasm and a straightening of the lumbar, which accompanies muscle spasm; and that the plaintiff had positive straight leg raising with the knee extended and the hip flexed and upon stretch on the sciatic nerve tenderness, and this caused pain on the right side and plaintiff could only get it up 45 degrees. Normal is 90 degrees. He further testified that the left side was painful; the contra lateral straight leg was 60 degrees; and otherwise the plaintiff was in good health. Surgery was performed on the plaintiff on October 4, 1962. There was scarring around the nerve root from previous surgery. They did not find a free fragment of disk out of the space. The nerve root was swollen two or three times larger than it should have been. This indicated some trauma or something to stretch the nerve root which was bound down by scar tissue. The doctor was of the opinion that this was of recent origin, and due to trauma from the recent injury. The doctor further testified that the injury the plaintiff suffered on September 18, 1962, contributed to an aggravation of a preexisting condition incurred in 1950 while the plaintiff was employed in a coal mine. The doctor further testified to the surgery performed by him which obtained good results; that the plaintiff would have

a permanent partial disability of 15 percent over his whole body for life; and that on October 8, the plaintiff was given certain barbiturates and narcotics, and also on October 9, certain of such medicines were prescribed for the plaintiff.

A claims adjuster for the Maryland Casualty Company was assigned to investigate the plaintiff's injury. He found the plaintiff at St. Catherine's Hospital. He asked at the information desk where the plaintiff was located, and was advised where he could find him. He had a conversation with the plaintiff and secured a statement from him. He further testified that when he entered the room the plaintiff and another man were discussing television; that the statement was taken October 9, 1962; and that he asked the plaintiff to read the statement over, and after he read it over this witness asked the plaintiff: "Are these the facts as you see it?" and "Is it true and correct?" Then the plaintiff signed the statement. He further testified that the plaintiff was able to carry on a clear conversation. All matters relevant to a statement of this type were talked over between the plaintiff and this witness. On cross-examination this witness testified that he did not get permission from any of the nurses, from the doctor, or from anyone else with reference to seeing the plaintiff; that he told the plaintiff he was investigating an incident to see if compensation was in order; that he presumed the plaintiff could read; and that this witness did not read the statement to the plaintiff.

The statement, in part, is as follows: "On or about September 18, 1962, around 3:20 p.m. I went to pick up some boards and I felt something snap in my back. * * * I did not slip or fall or trip when this incident occurred."

The plaintiff was called in rebuttal and testified that he had a fifth-grade education which he obtained in West Virginia; that he remembered the day the claims adjuster came to the hospital; that on Monday, the

night before, he had had a "hypo and another sleeping pill"; and that at 1 o'clock in the afternoon he was feeling drowsy. He further testified that he had pains in the back of his leg; that he could just barely remember somebody being there, because he was feeling very groggy; that the statement was never read over before he signed it; that he did not read it; and that he could not read it because he did not have his glasses which he needed to read.

A surgeon's report dated October 12, 1962, signed by the attending physician, contains the following statement: "State in patient's own words where and how accident occurred: He was working for the Mavis Construction Company and he bent over and felt a sharp pain in his back with radiation into both lower extremities."

The plaintiff, after the accident, first went to the Douglas County Hospital. The Douglas County Hospital report of accident dated September 20, 1962, is as follows: "laminectomy 1950—had been doing well since—until a few days ago when he felt something 'snap' in his back and has been having sharp pain from the small of the back to both legs."

The hospital record of St. Catherine's Hospital shows: "He was working for the Mavis Construction Company, and he bent over and felt a sharp pain in his back with radiation into both lower extremities." This was signed by the attending physician on September 22, 1962.

The report made by the Douglas County Hospital on September 20, 1962, and the record of St. Catherine's Hospital fail to state any such history of the plaintiff carrying lumber and falling due to stepping on a piece or block of wood. The same is true of the two separate reports of the attending physician on September 22, 1962, and October 12, 1962.

In a letter to Charles I. Scudder, Jr., attorney for the plaintiff, dated November 21, 1962, the doctor set out in detail the history given to him with reference to the

plaintiff stepping on a block of wood which caused pain in his back and leg as heretofore stated. This letter contained a diagnosis as follows: "1. Edema and adhesions about the S-1 nerve root with degenerative inter-vertebral disks L-4, 5 and L-5, S-1.

"2. Gluteal fibrositis involving the right gluteal region.

"Prognosis: This patient will most likely recover to the extent that he can continue to do manual labor, however, he will probably also continue to have some discomfort in the back resulting in approximately 10% disability of the back."

There are certain established rules applicable to this case.

"An appeal to this court in a workmen's compensation case is considered and determined de novo upon the record, and to entitle the plaintiff to a recovery he must sustain the burden of proof by a preponderance of the evidence that he suffered an accident arising out of and in the course of his employment." Klentz v. Transamerican Freightlines, Inc., 173 Neb. 53, 112 N. W. 2d 405.

"In considering the sufficiency of the proof, the rule of liberal construction, as it relates to the Workmen's Compensation Act, applies to the law and not to the evidence offered to support a claim by virtue of the law." Wheeler v. Northwestern Metal Co., 175 Neb. 841, 124 N. W. 2d 377.

"The rule that where evidence is irreconcilable and in direct conflict the court will consider the trial court's observation of the witnesses and their manner of testifying, and also that the trial court must have accepted one version rather than the opposite, applies to the Nebraska Workmen's Compensation Court where the matter was tried on rehearing and from which appeal was taken to the district court." Klentz v. Transamerican Freightlines, Inc., *supra.*

There were no witnesses to this accident. The hos-

pital records of the Douglas County Hospital fail to show or state any history that the plaintiff was carrying lumber, stepped on a piece of wood, and as a result sustained an accident. This report was made on September 20, 1962. Two separate reports of the attending surgeon taking the history of the plaintiff make no mention of plaintiff carrying lumber, stepping on a block of wood, falling, and sustaining an accident.

The plaintiff gave a statement to the claims adjuster for the insurance carrier and signed it. In the statement he made no claim of carrying lumber and falling as a result of stepping on a piece of wood, or a block of wood.

On October 12, 1962, the attending surgeon made a report in which no mention was made of such an accident as related by the plaintiff at the hearing before the Nebraska Workmen's Compensation Court.

It appears that on November 21, 1962, in reply to a request by the plaintiff's attorney for a report, the attending surgeon then did make mention of facts which support the facts of the alleged accident as testified to by the plaintiff at the different hearings. Thus, it appears from the record that from September 18, 1962, to November 21, 1962, this case, from all of the evidence, concerned a matter of feeling a "snap" in the back while the plaintiff bent over and was picking up some lumber. It will be observed that the report made by the attending surgeon on November 21, 1962, relating to the alleged accident, is materially different from what was previously reported as heretofore mentioned.

While the plaintiff complains of the statement made by him to the claims adjuster for the insurance carrier taken on October 9, 1962, which the plaintiff claims did not correctly state the facts recited by him, this statement does not stand alone, but is supported by the hospital records and the written report of the attending surgeon made on October 12, 1962, 3 days after the statement.

The judges of the Nebraska Workmen's Compensation

Court had an opportunity to observe the witnesses and their manner of testifying, and such court accepted one version of the facts rather than the opposite. The rule heretofore announced in Klentz v. Transamerican Freightlines, Inc., *supra,* is applicable.

The judgment of the trial court is hereby affirmed.

AFFIRMED.