DAVID L. DIKE, BY VELMA M. DIKE, HIS MOTHER AND NEXT FRIEND, APPELLANT, V. EDWARD BETZ ET AL., APPELLEES.

149 N. W. 2d 750

Filed April 7, 1967. No. 36468.

James L. Macken, for appellant.

Robert M. Harris and Atkins, Ferguson & Nichols, for appellees.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

NEWTON, J.

This is an appeal in a workmen's compensation case. Appellant, David L. Dike, was an employee of appellee, Edward Betz, and alleges that during construction of a concrete liner in an irrigation ditch on the farm owned and operated by appellees, Lester Klein and Vernetta Klein, his wife, he sustained injuries. Appellee Betz did not carry workmen's compensation insurance. On hearing before a single judge of the Workmen's Compensation Court, an award was made to appellant. On rehearing before the full court and on appeal to the district court, his claim was denied, such action being based specifically on lack of credibility of appellant and his witnesses.

Appellant originally claimed and alleged that his accident occurred on May 5, 1964, but subsequently amended his petition and now claims that the accident occurred on May 1, 1964. He testified that he was employed by appellee Betz and on May 1, 1964, they were engaged in constructing a concrete liner in an irrigation ditch on the farm of appellees Klein. Immediately following the pouring of the cement and while other employees, to wit, Donald Dike, Donald Betz, Gerald Kling, and Leonard Reizenstein, were forming and finishing the cement, appellant was pulling laths off the 2 by 4's used in making forms, which 2 by 4's had already been removed from the ditch, and while carrying a bundle of the laths so removed from the 2 by 4's, he stumbled over a chunk of hardpan and, in falling, his knees struck some 2 by 4's, inflicting injuries to both knees. He sustained momentary pain but continued to work. He had had no trouble with his knees before, but that night they swelled badly. Appellee Betz was absent at the time the accident was said to have occurred, but returned soon thereafter and appellant informed him he had hurt his knee. He does not recall if he went to work the next day, but does recall that he worked for Betz later. A few days later, appellant does not recall how many, while working on a job east of town, his knees bothered him, he went and sat in a truck, and Betz came along, asked what was the matter, and was told he hurt his knees. A few days later, while Betz, appellant, and the entire crew were having lunch in a building where Betz stored his equipment, he again had a conversation with Betz, who told him to work a couple of days until he, Betz, got his insurance in effect, and "he would say that it happened while he had the insurance," also, to wait a few days before going to a doctor. He did wait a few days, then called on Mrs. Betz, wife of appellee, who sent him to Cecil Hall's office, after which he went to Dr. Wiley's office and was examined either by Dr. Wiley or Dr. Barnwell. He does not recall

which one nor does he recall how much pay he received, but thought his take-home pay was around $50 a week. Appellant worked a few days later on for Betz, but had trouble with his knees and does not recall whether he quit or was laid off. He did some work for other parties afterwards, but his knees bothered him and would swell when he did heavy work. Commencing in January 1965, surgery was performed on his knees.

On cross-examination, appellant stated that the ditch being constructed was a step-off ditch. The form sections constructed of 20 foot 2 by 4's were also 20 feet long. The ditch was 150 to 200 feet long and they were still pouring cement at one end when the accident occurred. He was asked, "And you were taking the forms off—as I understood you, they were already off?" to which he replied, "We were stripping them up at the end where I was and I was taking off the lath from them." He further testified: "Q You weren't taking the forms off of the ditch, itself? A Yes, sir, you have to take the forms off and then take the laths off, too. Q I think you missed my question. Were you doing that, personally? A I helped do it, yes, sir. Q Who else was working up there? A I don't recall now. Q Was there anybody else working up there? A I don't recall. Q Was it normal that more than one person worked to remove the forms? A Yes, sir. Q If there had been anybody else working they would have been right in your immediate area, wouldn't they? A I guess so." He further stated that he couldn't remember but believed the forms he fell on had already been removed from the ditch. The forms were lying on both sides of the ditch, all the way down beside him. There would be four or five laths nailed to a single form. He was picking up the lath and had both hands full as he walked along picking them up, dropped some, and started to reach down when he stumbled and fell. He does not recall what time of day the accident happened, or whether it was morning or afternoon, nor the day of

the week. It was on May 7, 1964, when he went to the doctor. He had originally thought the accident happened on May 5 because he figured he had waited a couple of days before going to the doctor, but concluded the accident occurred on May 1 when he learned the only cement poured at Lester Klein's was on April 30 and May 1. He also testified that his conversation with Mr. Betz in the truck was several days after the accident and that the second conversation with Mr. Betz, when at lunch east of town, was several days after the first conversation. It was at the time of this last conversation that Mr. Betz told him to work a couple of days until his insurance went into effect and then to go to a doctor. He reiterated that he went to the doctor on May 7; the accident happened on May 1; the two conversations were several days apart; and he waited some more days before going to the doctor. All the other employees were at the other end of the ditch when the accident happened.

He met with his attorney, his brother, Gerald Kling, and another person one night at a filling station in which his brother had an interest and at that time, Gerald Kling was informed that the accident happened May 1. Subsequent to the accident, he worked for a Mr. Bernhardt who was in the same business as Mr. Betz, for the L. W. Cox Lumber Company shoveling coal, and for Merced Blanco driving a truck. He quit school in the ninth grade, denies having a conversation with Donald Betz at the end of May or the first part of June 1964, wherein he stated he had hurt one knee, but was going to try to get both fixed, denies telling Gerald Kling that "one kneecap snapped," but admits having said something about "my kneecap popping." He further denies telling Gerald Kling that he was going "to try to collect for both knees" and does not recall telling Cecil Hall how the accident happened.

Appellant's brother, Donald Dike, testified he did not see the accident, was 100 or 150 feet away, but heard

appellant say something, looked around, and saw him holding his knees. He inquired what happened and was told by appellant he had fallen and hurt his knees while pulling laths off 2 by 4's. This witness talked to appellee Betz at least 2 weeks later in a pick-up truck, told him of the accident, and was informed that appellant would have to wait until Betz got his insurance in effect at which time appellant could work a couple of days, say he got hurt then, and go to a doctor. This witness also stated that he and Gerald Kling talked to appellant about the accident the same day it occurred, but later, on cross-examination, stated that this conversation occurred 6 months later and says that he had a second conversation with Mr. Betz when Gerald Kling was present, which occurred before the witness' conversation with Betz in the pick-up, but does not recall when or where, but both conversations occurred after appellant had gone to a doctor.

Velma M. Dike, mother of appellant, stated that one night during the first part of May 1964, while appellant was working with Betz, his knees swelled and became very painful.

Dr. Calvin M. Oba stated that he examined appellant on August 27, 1964, took X-rays and also examined X-ray films taken by Drs. Wiley and Barnwell. Appellant informed the doctor he had slipped on gravel and in falling, his knees had struck a 2 by 4 across a trenching ditch. He found loose bodies within the knee joint in both knees, with a softening and damage to the cartilage underneath the kneecap. In his opinion, appellant had had loose bodies in the knee prior to the accident which condition was aggravated by the injury. He recommended surgery which was performed on both knees. In his opinion, appellant would have had difficulty sooner or later with his knees, with or without trauma.

Dr. Gerhard W. Schmitz testified that he examined appellant January 21, 1966, and found that he suffered

a partial disability of 12 percent in the right leg and 12½ percent in the other.

Cecil Hall testified that he handled insurance for appellee Betz and on the occasion when appellant called at his office, appellant told him he had fallen on a "stake" and injured his "knee." On cross-examination, this witness admitted that Betz had threatened to sue him because he had not had insurance coverage.

Appellee Betz testified that appellant reported for work on May 2, the day following the alleged injury, but no work was done because of weather conditions. Thereafter appellant worked for him 10½ hours on May 6, 6½ hours on the 16th, 11 hours on the 18th, 10½ hours on the 19th, and 11 hours on the 20th. He further stated that on a ditching job such as the one on the farm of appellees Klein, the job was always completed before the forms were removed and that everyone helped on the removal of the forms. Appellant did not talk with him on May 1, 1964, about any injury nor was there any conversation about such an injury at any later date when his entire crew was present. He did not at any time tell appellant or his brother to wait on seeing a doctor until he obtained insurance, but on May 6 he first learned from Donald Dike that appellant had leg trouble, and said for appellant to go to the house, pick up a slip from his wife, and go to Dr. Campbell.

Donald Betz, son of appellee Betz, testified that a few days after the accident is alleged to have occurred, appellant told him, "I hurt this one knee out on the job and, I would like to see if I can't get the other one fixed" and appellant said he was going to try and get it fixed. The witness denied that there was ever any conversation at a point east of Scottsbluff in the presence of the entire crew at which appellee Betz told appellant to work a couple of days until his insurance went into effect before going to a doctor.

Gerald Kling testified to a conversation with appellant in which appellant said he "jerked a form and

thought he hurt his kneecap on one leg." He does not recall a conversation during the lunch hour, east of Scottsbluff, wherein appellee Betz told appellant to work a couple of days until his insurance went into effect before going to a doctor, but on cross-examination, admitted that he had testified at a previous hearing that Betz said appellant was to hold off going to a doctor until Betz could get his insurance into effect. Witness insisted he could not recall such a conversation.

The foregoing is the substance of evidence introduced at the trial of this cause and the basis for the finding by the full Workmen's Compensation Court that it could not give credence to appellant's claim, notwithstanding that one member of the court had previously found in favor of appellant. The appellant's recollection was very hazy regarding all elements surrounding the injury, including the date and time of day, except as to the occurrence of the accident, and even in this respect his statements are contradictory. He testified that he tripped over a chunk of "hardpan" and struck both knees, informed Dr. Oba that he "slipped on gravel," and informed Cecil Hall not that he fell on a 2 by 4, but that one knee struck a "stake." No one saw the alleged accident occur, appellant continued to work, and reported for work the following day. The only verification that an accident occurred is that of his brother who said he saw him holding his knees and that appellant stated he had hurt them. Appellant denies that he had ever had any difficulty with his knees, yet the undisputed evidence of his own doctor is to the effect that he had "loose bodies" in both knees which sooner or later would cause trouble with or without an injury. Appellant further claims that he fell and injured both knees, yet two witnesses say that sometime after the accident he claimed to have injured only one knee. Due to the uncertainties and indefiniteness in appellant's testimony and to his contradictory statements made to others, it does not appear with any reasonable degree of certainty

that appellant sustained an injury at the time and place alleged or, in fact, any injury at all. The Workmen's Compensation Court found in dismissing appellant's petition that appellant had failed to establish his claim by a preponderance of the evidence.

A workmen's compensation cause on an appeal to this court is considered de novo upon the record, but where the evidence is conflicting and cannot be reconciled, this court will consider the fact that the trial court observed the demeanor of witnesses and gave credence to the testimony of some rather than to the contradictory testimony of the others. See Wengler v. Grosshans Lumber Co., 173 Neb. 839, 115 N. W. 2d 415. To entitle the plaintiff to recover, he must sustain the burden of proof by a preponderance of the evidence that he suffered an accident arising out of and in the course of his employment. The rule of liberal construction is not applicable to the evidence offered to support a workmen's compensation claim. Where the matter was tried on rehearing and appeal was taken to the district court, and where the evidence is irreconcilable and in direct conflict, the court will consider that the trial court observed the witnesses, and their manner of testifying, and must have accepted one version of the facts rather than the opposite. See Runyons v. Mavis & Sons, Inc., 177 Neb. 179, 128 N. W. 2d 596. Where testimony gives rise to conflicting inferences of equal degree of probability so that the choice between them is a mere matter of conjecture, a workmen's compensation award cannot be sustained. Such an award cannot be based on possibility or speculation, and, if an inference favorable to the claimant can only be reached on such basis, he cannot recover. See Welke v. City of Ainsworth, 179 Neb. 496, 138 N. W. 2d 808.

Triers of fact are not compelled to accept as absolute verity every statement of a witness not contradicted by direct evidence. The persuasiveness of evidence may be destroyed even though uncontroverted by direct testi-

mony. See Klentz v. Transamerican Freightlines, Inc., 173 Neb. 53, 112 N. W. 2d 405.

In this case, the evidence of appellant was so indefinite, uncertain, and subject to so many contradictions that the trial court found its credibility to be destroyed and denied an award to appellant. The record in this case does not establish appellant's claim with sufficient clarity and certainty to enable this court to disregard the finding of the trial court that appellant failed to establish his cause by a preponderance of the evidence and the finding of the trial court should be and is affirmed.

AFFIRMED.