(No. 20009

THE STANDARD OIL COMPANY, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(CHARLES H. WILLIAMSON, Defendant in Error.)

*Opinion filed April 17, 1930.*

L. L. STEPHENS, and R. J. FELLINGHAM, for plaintiff in error.

JOHN F. McGINNIS, JR., for defendant in error.

Mr. CHIEF JUSTICE FARMER delivered the opinion of the court:

Charles H. Williamson filed with the Industrial Commission on October 28, 1927, a claim for compensation for an accidental injury which he alleged he received, "driving rivets as boilermaker," on November 16, 1926, while employed by the Standard Oil Company at Wood River, Illinois. A hearing was had before an arbitrator, who found Williamson sustained an accidental injury on November 16, 1926, which arose out of and in the course of his employment, and awarded compensation at the rate of $18 per week for a period of 54 weeks for temporary disability and a further period of 180 weeks at $18 per week for the permanent loss of his left leg. The cause was reviewed by the Industrial Commission and the award of the arbitrator affirmed. A further review on *certiorari* proceedings was had before the circuit court of Madison county and the decision of the Industrial Commission was confirmed. Upon

the petition of the company this court granted a writ of error for a further review.

Williamson had been employed by the Standard Oil Company for more than two years as a boilermaker. Driving rivets was a part of the work and an air machine was used for this purpose. In the operation of the machine it appears that Williamson placed some part of the machine against his left leg, and the machine, when in use, vibrates continuously or "kicks back." According to Williamson's testimony, for about a half-hour one evening during November, 1926, he was knocking coke off the inside of a still while the still was hot and the rivets gummy, and this gummy condition caused the air machine he was using to jump. When he went home that night his left leg began to get sore in the region of the groin and he put some hot rags on it. Next morning he went to the company's first aid office. The regular first aid man was not there and Williamson proceeded to his work, using the riveting machine at the same place and in the same manner. Next day he went back to the first aid office to see Dr. Hastings, the company doctor, whose record shows he examined Williamson at that time, which was December 2, 1926. The doctor found a tumor mass about four inches long and two and one-half inches wide on the upper and inner part of the left thigh. There was no evidence of discoloration, tenderness or bruise and nothing to show a recent injury or any aggravation of any previously existing condition. Williamson told Dr. Hastings and several others connected with the company that his ailment was caused from the use of the air gun, but he does not claim he told anyone about any particular time of injury or accidental occurrence until long after the first part of December, 1926. The employee claims Dr. Hastings told him his trouble was caused by a bruise, but this is denied by the doctor. Williamson was sent to Chicago on January 18, 1927, where he was examined by Dr. Morton, chief surgeon and medical director for

the Standard Oil Company. After these medical examinations and reports thereon the employer did not accept the alleged injury as an accidental one under the Compensation act. The company doctors advised Williamson that he should have the tumor removed. He continued to work for the company at different employment but at the same wages previously paid him, until May 18, 1927, when he was laid off because of a reduction of employees. On August 4, 1927, Williamson had Dr. Pfeiffenberger operate upon him for the removal of the tumor. The doctor was assisted by Dr. Williamson, who was no relation to the claimant. A few days after the operation thrombosis of the artery developed, and the patient's left leg had to be amputated about six inches below the knee. No evidence concerning the length of time the claimant was incapacitated after the operation or as to his medical or surgical expense was presented. Neither was there any testimony offered showing the usefulness of the claimant's left leg. The company has paid no compensation, medical or surgical expense to the employee.

The chief contentions of plaintiff in error are, (1) that there was no accidental injury; (2) that the tumor was not caused by a traumatism; (3) that the disability was not due to aggravation of a diseased condition; and (4) the award as stated is incorrect.

In the view we take of this record it will be unnecessary to discuss all of the points relied upon by counsel for the employer. Several witnesses were examined at the hearing. However, it will serve no useful purpose in setting out in detail all of the testimony presented by the parties. Dr. Pfeiffenberger, who operated upon the employee, first examined him on December 11, 1926, and again on February 5, 1927. The condition was about the same on each occasion. He found the size, condition and location of the tumor about as Dr. Hastings did on December 2. The claimant's doctor stated there was no evidence of local in-

flammation or tenderness at the time of either examination, and no aggravation, lighting up or starting something that did not exist before. The doctor stated the growth was a lipoma or fatty tumor; that he did not know what caused this particular growth and that such a mass is not sudden in its growth. He had never heard of a lipoma being caused by a trauma. He further stated that in the operation he found no direct evidence of a trauma. After the operation the growth was sent to a St. Louis pathologist for examination, who reported the growth to be a lymphangioma and that it was not of a malignant type. The doctor also stated that the claimant's constant use of an air gun over a long period of time might set up such a growth. The testimony of Dr. Williamson was of a similar nature as to the cause of the growth. Neither of the medical witnesses for Williamson testified that the growth was caused by any particular occurrence or accident or that it was definitely caused by the nature of the claimant's employment. A fair analysis of their entire testimony is that the tumor might have been caused, or one could be caused, by the constant use of the air gun over a period of time.

The record discloses that Dr. Hastings examined Williamson within forty-eight hours after the time he alleges the riveting machine "kicked back" unusually hard. There were no indications present then, or at any future examination, showing that an injury had occurred, and the doctor further stated the claimant made no claim to him of any particular injury or accident having happened. The doctor was of opinion that the growth was of long standing and was not caused by the use of the air gun. He stated that experience teaches that such growths come without trauma. Dr. Morton, who has had large experience in industrial and surgical cases, stated he examined Williamson in Chicago during January, 1927. His diagnosis was that Williamson had a diffuse lipoma. The doctor told the employee the ailment was not one for which the company

was responsible and that he should secure a good surgeon and be operated on. The doctor communicated with the St. Louis pathologist after the latter had made his report to the claimant's doctor upon the removed tumor, and was assured by the pathologist that the growth was a lymphangioma. Dr. Morton stated such a tumor was one of new growth or formation of lymph vessels; that it was a benign type of tumor and very rare. He stated he had had large experience with benign tumors; that in his opinion a lymphangioma is not caused by traumatism, and that he had never seen a benign tumor caused by injury. The doctor further stated that the growth in the employee's groin was not caused by any irritation from the air gun.

There is also testimony in the record of statements made by Williamson during January, 1927, to the effect that he had been troubled with this difficulty in his groin for a long time, but there was no testimony of any consequence and no indications or symptoms showing an aggravation of any previously existing condition.

The claimant, under the Compensation act, must prove by direct and positive evidence, or by evidence from which the inference can be fairly and reasonably drawn, that the accidental injury arose out of and in the course of his employment. (*Edelweiss Gardens* v. *Industrial Com.* 290 Ill. 459.) Though this court is not warranted in reversing the finding of the commission unless the award is shown to be clearly against the manifest weight of the evidence, yet it is the duty of the courts to weigh and consider the evidence in the record, and if it is found that the decision of the commission is without substantial foundation in the evidence it must be set aside. Liability under the Compensation act cannot rest upon imagination, speculation or conjecture or upon a choice between two views equally compatible with the evidence, but must be based upon facts established by a preponderance of the evidence. (*Berry* v. *Industrial Com.* 335 Ill. 374.) Awards for compensation

cannot be based upon possibilities or probabilities but must be based upon sufficient evidence showing that the claimant has incurred a disability arising out of and in the course of his employment. (*Standard Oil Co.* v. *Industrial Com.* 322 Ill. 524.) The evidence in this record fails to show satisfactorily that Williamson's disability resulted from an accidental injury arising out of and in the course of his employment.

The judgment of the circuit court is reversed and the award of the Industrial Commission is set aside.

*Judgment reversed and award set aside.*