JENNIE E. HUFFMAN, APPELLANT, V. GREAT WESTERN SUGAR COMPANY, APPELLEE.

FILED SEPTEMBER 22, 1933. No. 28601.

*Wright & Wright,* for appellant.

*Mothersead & York, contra.*

Heard before GOSS, C. J., ROSE, DAY and PAINE, JJ., and BEGLEY, LANDIS and MEYER, District Judges.

MEYER, District Judge.

This is an action brought under the workmen's compensation act. Herbert Huffman was employed as a warehouseman for the defendant at Scottsbluff. He appeared to be in good health when he went to work on the morning of November 5, 1931. After about 3 o'clock on the afternoon of that day he was testing scales. In doing so, he lifted 40 to 50 one-hundred pound sacks of sugar from the scales to an endless belt conveyor about 18 inches to 2 feet away. He would pull off a sack or two from the scales, then weigh the remainder and adjust the scales to make them balance; the performance was then repeated over and over until 4:30 or 4:45 p. m. His son-in-law, who was working with him, noting shortly after they started that he "looked like he might be fatigued or tired," asked him if he was tired, and he stated "that he felt as if he might have eaten something; that is, he felt heavy or logy." Huffman left work about 4:45 p. m. saying he was tired and thought he would go home early and rest for a party he was to attend that evening.

After reaching home Mrs. Huffman noticed nothing unusual about his condition except that he appeared tired, but she testified that he always appeared tired when he got home from work. He ate a heavy supper, accom-

panied his wife to a social, and there ate some pumpkin pie and drank a cup of coffee, went home about 11 o'clock, and as he was going to bed complained for the first time of his stomach hurting him. His distress increased. Enemas were given him with little results. During the night he started vomiting and his pain increased. At 3 a. m. an osteopath was called, who had charge of the case until the following evening, making several calls. His condition then being critical, a physician was called and an operation performed. About a yard of the small intestine which was found to be twisted and gangrenous was resected. A few days later he died. The doctors said the correct medical term for a twisted bowel is volvulus and the osteopath testified that he died of shock caused by the gangrene of the bowel plus the shock of the operation.

Jennie E. Huffman, wife and dependent of deceased, made claim before the compensation commissioner for compensation, claiming that the strain of lifting the sugar caused his bowel to become twisted, thus causing the gangrene which in turn caused his death. The claim was disallowed, whereupon plaintiff appealed to the district court, and upon hearing held in that court, at the close of the testimony of the claimant, upon motion of the defendant, the case was dismissed. Plaintiff appealed.

Was plaintiff's evidence sufficient to establish that deceased's illness and subsequent death were caused by an accident arising out of and in the course of his employment? The evidence is not persuasive.

The doctors differ in their evidence as to the condition of the intestine at the time of the operation and the physician's testimony is at odds with the hospital report. On cross-examination he says the report is his, but that it is wrong. Both testify that volvulus may be produced by a severe catharsis, fecal impaction, constipation, a severe strain or other causes; that thrombosis or embolism would produce gangrene, and that if Huffman had suffered a thrombosis after he went to bed that night it

could have produced gangrene exactly to the same extent as was found; that the history did not indicate thrombosis or embolism; however, due to the seriousness of the matter, no time was taken for exact exploring. In answering a hypothetical question the osteopath testified that in his opinion the bowel pathology was caused by strain of lifting the sugar. The physician in answering a hypothetical question said: "I can state this, I can give my opinion as to it." "My opinion is that, if this man was straining himself when these symptoms occurred, that was the beginning of his trouble and the responsibility rests there." The answer assumes that Huffman was straining himself and also assumes the presence of the symptoms mentioned in the question at the time of straining, while the only symptoms included in the hypothetical question were symptoms that occurred some eight or nine hours after Huffman was lifting the sacks of sugar.

Both doctors testify that, if there was a strain sufficient to produce a condition such as Huffman's, the first indication of such condition would be distress, discomfort and pain. Huffman did not complain of pain before 11 o'clock that night. The osteopath testified that the effect of a volvulus amounting to a complete twisting of the bowel would be a very severe pain and immediate rigidity and shock, immediate prostration; if sufficient to cut off the nerve impulses and blood, gangrene would set in immediately, and that one cannot have gangrene long without temperature. The evidence shows Huffman had only developed one degree of temperature by the next noon, and no rigidity until the middle of the afternoon.

The doctors also say that, after Huffman's bowel was folded on itself or started to twist, it tightened down gradually. However, the osteopath later says that in his opinion the bowel was in the same position at the time he quit work as at the time of the operation, and that at the time of the operation it was twisted sufficiently to cut off the blood supply completely. He also says it is

all a matter of conjecture with him as to what caused the bowel to be in that position. On redirect he says: "Conjecture in this instance is a matter of our best judgment. We cannot see what is going on in there, we cannot X-ray a bowel like that; the best diagnostician can only conjecture."

It is needless to recite more of the evidence. We have examined all of it carefully and it fails to carry that conviction upon which a judgment of a court should rest. Money ought not be transferred from one party's pocket to that of another upon evidence of such doubtful import.

If the doctors by their testimony mean to imply that the ordinary exertion incident to the handling of the sugar caused the bowel pathology testified to, we fail to find in the evidence satisfactory explanation of, or sufficient foundation for, such inference. If they mean to say that, while lifting the sugar Huffman strained himself and that the strain caused the twist in the bowel, such evidence is insufficient upon which to base an award, for there is no proof that he strained himself, unless it be argued that volvulus may be caused by strain, and since Huffman had a volvulus that he strained himself.

"If an inference favorable to the applicant can only be reached by speculation or conjecture, then the applicant cannot recover." *De Bruler v. City of Bayard,* 124 Neb. 566.

"Awards for compensation cannot be based upon possibilities or probabilities, but must be based on sufficient evidence showing that the claimant has incurred a disability arising out of and in the course of his employment." *Bartlett v. Eaton,* 123 Neb. 599.

In this case the burden was upon the claimant to show with reasonable certainty that personal injury was caused to the employee by an accident arising out of and in the course of his employment. She must remove the case beyond the realm of speculation and conjecture. *Omaha & C. B. Street R. Co. v. Johnson,* 109 Neb. 526.

Upon consideration of the evidence, we are of the

opinion that the plaintiff has failed to show that Huffman's condition was caused by an accident arising out of and in the course of his employment by the defendant. The judgment of the district court is

AFFIRMED.