JAMES L. DENNEHY, APPELLEE, V. LINCOLN STEEL WORKS
ET AL., APPELLANTS.

285 N. W. 590

FILED MAY 5, 1939. No. 30659.

*Chambers, Holland & Locke,* for appellants.

*Max Kier, contra.*

Heard before SIMMONS, C. J., EBERLY, PAINE, CARTER, MESSMORE and JOHNSEN, JJ., and KROGER, District Judge.

CARTER, J.

This is an appeal from an award of disability benefits under the workmen's compensation act.

The evidence shows that plaintiff suffered an accident on October 25, 1937, while in the employ of the Lincoln Steel Works and engaged in the operation of a rivet heater. It appears that a small explosion occurred which caused burning oil to be thrown on plaintiff. As a result, plaintiff's right arm, shoulder, neck and ear were burned. Plaintiff made a good recovery except that a keloid scar remained on the upper part of the right arm. This scar tissue is in no manner attached to the underlying muscles or ligaments. It is, however, a source of constant annoyance because of

stiffness. There is evidence in the record that the condition of the arm can be much improved by proper medical treatment. There is medical evidence in the record sufficient to support a finding that plaintiff's right arm is temporarily disabled to the extent of 50 *per centum*. We are of the opinion that plaintiff's right arm is still in the healing stage, and that the employer should be required to provide medical treatments until the permanent disability to the arm, if any, can be determined. During this period plaintiff is entitled to temporary partial disability benefits.

The more serious issue in the case is the claim of the plaintiff that he has suffered disability to his eyes as a result of this accident. It is the testimony of Dr. D. D. Sanderson, an eye specialist called by the plaintiff, that a toxic condition existed as a result of the burns, which affected plaintiff's eyes, and either caused a disease of the eye known as glaucoma, or contributed to a condition which resulted in this disease. This disease causes' the eyeballs to become hard, due to intraocular pressure. Dr. Sanderson testifies that this condition exists. That a toxic condition was found immediately following the accident is not disputed.

The defendant called Dr. John C. Thompson, who testified that the plaintiff was suffering from diabetes insipidus or pituitary polyuria. This disease is the result of a disturbance of the function of the pituitary gland, and is not a common ailment. One of the symptoms of this disease is that the patient drinks large quantities of water, and likewise passes large quantities of urine of low specific gravity. The history given by the patient, as well as the actual examination and observation of the plaintiff, revealed that these symptoms were present. Dr. Thompson also states that no toxic condition existed at the time he examined the plaintiff. The hospital records also show no toxic condition after the fifth day plaintiff was in the hospital.

Plaintiff met this evidence with the testimony of Dr. I. C. Munger, who was positive that plaintiff did not have

diabetes insipidus or pituitary polyuria for the reason that the drinking and voiding of large quantities of water was not a sufficient basis for such a diagnosis. Dr. Munger testified that no toxic condition existed, either from the burns or from any other source, and was unable to account for the cause of plaintiff's partial loss of vision.

Defendant also called Dr. J. J. Hompes, an eye specialist, who testified that plaintiff had an impairment of vision in both eyes, principally in the peripheral field. His examination revealed that plaintiff's eyeballs had a subnormal intraocular tension, instead of hard eyeballs as testified to by Dr. Sanderson. His testimony was that pituitary polyuria would cause this condition to exist, and if plaintiff had this ailment it was undoubtedly the cause of the impairment of vision.

The experts differ as to whether plaintiff was afflicted with pituitary polyuria. The issue can be determined, however, without a finding on this point. The evidence is clear that the burns suffered by the plaintiff could affect the eyes only as a result of a toxic condition emanating therefrom, and that a removal of the toxic condition would restore complete vision. All the medical experts agree, with the possible exception of Dr. Sanderson, that no toxic condition was found when the patient was examined after he left the hospital. This evidence, coupled with the history and circumstances of the case, convinces us that a finding that the burns suffered in the accident caused the impaired condition of plaintiff's eyes is very speculative. In fact, the evidence preponderates in favor of defendant on this point. The burden of proof is upon the plaintiff to prove that his impaired vision was due to the accident. An award cannot be sustained if based on conjectural or speculative evidence. *Price v. Burlington Refrigerator Express Co.*, 131 Neb. 657, 269 N. W. 425. We necessarily conclude that plaintiff has not sustained the burden of showing that the impairment of his vision was due to the accident.

The determination of the amount of the temporary partial disability award during the healing period is one of

difficulty in this case. The evidence most favorable to plaintiff fixes his disability at 50 *per centum* of the right arm. This, however, ought not to be, and is not the sole basis for determining the amount of a temporary partial disability award. All the experts agree that plaintiff's arm can be improved by giving it X-ray treatments. Plaintiff claims that he has a weakness in his arm, which makes it impossible to do the kind of work he did before. He worked for the Lincoln Steel Works from January 21, 1938, until August 27, 1938, at light work and received full wages for so doing. He has not been employed since he was discharged by the Lincoln Steel Works. The fact that treatments will be required during the healing period undoubtedly reduces his earning power to some extent during that period.

The applicable section of the statute provides: "(2) For disability partial in character (except the particular cases mentioned in subdivision 3 of this section), the compensation shall be sixty-six and two-thirds *per centum* of the difference between the wages received at the time of the injury and the earning power of the employee thereafter." Comp. St. 1929, sec. 48-121.

The injuries complained of in the instant case pertain only to the right arm. In determining any permanent partial disability, we must look to subdivision 3 of section 48-121, Comp. St. 1929, which provides: "For the loss of an arm, sixty-six and two-thirds *per centum* of daily wages during two hundred twenty-five weeks. * * * In all cases involving a permanent partial loss of the use or function of any of the members mentioned in subdivision 3 of section 3662 (48-121) the compensation shall bear such relation to the amounts named in said subdivision 3 of section 3662 as the disabilities bear to those produced by the injuries named therein."

It is clear, however, that an award for temporary partial disability is authorized by subdivision 2 of section 48-121, Comp. St. 1929. This is true even though permanent partial disability must be computed under subdivision 3. The

evidence in this case will not support a finding of temporary total disability. On the other hand, the record is just as clear that plaintiff is partially disabled and that proper medical care will reduce the disability materially. The fact that an employee has a 50 *per centum* arm disability does not mean that he has a 50 *per centum* temporary partial disability under the compensation law, nor does it mean that he is limited to a recovery of an award for 50 *per centum* temporary partial disability. All of the factors which tend to throw light upon the earning power of the employee, subsequent to his injury, ought to be considered in computing a proper award. Until medical treatments have been completed and the condition of the employee has reached the point that the permanent partial disability, if any, can be determined, the employee is entitled to an award of "sixty-six and two-thirds *per centum* of the difference between the wages received at the time of the injury and the earning power of the employee thereafter," as provided by subdivision 2 of section 48-121, Comp. St. 1929.

While there is evidence in the record as to the amount of disability to plaintiff's right arm, the evidence as to his loss of earning power after the accident and during the period for which temporary partial disability is claimed is very meager. In fact, the evidence is of such a character that we are unable to determine the temporary partial disability of the plaintiff during the period for which claim is made. The award of the district court will be set aside and the cause remanded, with directions to take evidence to determine the temporary partial disability of plaintiff from August 27, 1938, until such time as the permanent partial disability, if any there be, can be determined, and that a new award be entered thereon in accordance with the views expressed in this opinion.

REVERSED.