ALBERT GRABER, APPELLANT, v. O. L. SCHEER ET AL., APPELLEES.

114 N. W. 2d 13

Filed March 23, 1962. No. 35159.

*Hutton & Hutton*, for appellant.

*Bernard Ptak, Frederick M. Deutsch,* and *William I. Hagen,* for appellees.

Heard before CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

BOSLAUGH, J.

This is an appeal in a proceeding under the Workmen's Compensation Act. Albert Graber, the appellant, was the plaintiff in the lower court. O. L. Scheer and Federated Insurance Company, the appellees, were defendants. For convenience, O. L. Scheer will be referred to as the defendant and Federated Insurance Company as the insurance company.

The plaintiff recovered an award in the compensation court. The defendant and the insurance company each waived rehearing before the full compensation court and appealed to the district court. Before trial, the separate appeals were consolidated and thereafter proceeded as one action.

At the close of the plaintiff's evidence the district court sustained separate motions by the defendant and the insurance company to dismiss the action. The plaintiff's motion for new trial was overruled and he has appealed. The assignments of error all relate to the action of the trial court in dismissing the action at the close of the plaintiff's evidence.

An appeal to the Supreme Court in a workmen's compensation case is considered and determined de novo upon the record. Breland v. Ceco Steel Products Corp., *ante* p. 354, 113 N. W. 2d 528. Thus, the question presented in this case is whether the evidence of the plaintiff is sufficient to establish a right to compensation under the act.

The evidence shows that the defendant and his wife own property in Norfolk, Nebraska. On and prior to May 25, 1960, the defendant was engaged in construct-

ing an apartment house upon this property. The defendant did not enter into a contract with a general contractor for the construction of the building but dealt directly with subcontractors and other workmen for the construction of the building.

During April and May 1960, the plaintiff was employed by the defendant as a carpenter's helper to work on the building. On May 24, 1960, the plaintiff spent the day nailing tar paper to the roof. On the morning of May 25, 1960, the plaintiff worked at applying plastic roofing cement over the tar paper. The roofing cement was spread with a trowel without being heated. Another layer of tar paper was then laid over the roofing cement. The plaintiff was on his hands and knees while doing this work.

There is no evidence as to the composition of the roofing cement other than it did not contain coal tar. There is no direct evidence that the particular roofing cement which was used contained any ingredient that would produce irritation or inflammation of the skin.

The plaintiff testified that after working with the roofing cement there was some of it on his arms, legs, and clothing; that at about noon, after he had been working for 3½ or 4 hours, his arms and legs began to burn; that when he wiped the back of his neck it began to burn; and that he told Mr. Taylor and the carpenter foreman, " 'I don't think I can stand this any longer. That's burning me so bad I can't stand it.' " He further testified that he went to his home, attempted to wash the roofing cement from his arms, legs, and the back of his neck; and that he applied vaseline to the skin. The plaintiff did not return to work thereafter.

Bert Taylor testified that the plaintiff made no statement to him on the morning of May 25, 1960, about being burned or feeling burned or anything of that nature, and that he did not know of there being anything wrong with the plaintiff on that day.

There is an issue as to self-medication in this case.

The plaintiff did not consult a physician until 12 days after the alleged accident and injury. The evidence is not clear as to what was applied to the plaintiff's skin during this time. The following occurred on cross-examination: "Q. Didn't you treat yourself from May 25th to June 6th in some way, shape, or form, using your liniment and remedies of Raleigh products? A. Very little. Q. You used some? A. I don't use it though. Q. You did use some though, didn't you? A. I would say no."

On June 6, 1960, the plaintiff consulted Dr. James H. Dunlap. Dr. Dunlap found that the plaintiff was suffering from an acute dermatitis or inflammation of the skin on the back of the neck, the back of the hands, the forearms, and the shins. Dr. Dunlap testified that the plaintiff told him that he had been working with a tarry substance used for roofing material with considerable exposure to sunlight; that within a few hours after that a skin problem developed on the back of the plaintiff's neck; that within the next few hours and days the skin problem developed on the upper and lower extremities but primarily on the lower extremities; and that acute dermatitis developed over the next few days. Dr. Dunlap further testified that, initially, the plaintiff had an acute sunburn and a dermatitis caused by contact with foreign materials. The plaintiff also had decreased circulation to the lower extremities. Later the plaintiff developed infection in the areas affected, injury from scratching the affected areas, and sensitivity to the medicines used in his treatment.

On cross-examination Dr. Dunlap testified that he did not know what the primary irritant was that caused the plaintiff's dermatitis; that there is no way to tell what caused the plaintiff's condition except from what the plaintiff told him; that the plaintiff's condition could be brought on by numerous causes, one of which was roofing material; that roofing material might or might not cause dermatitis; that many other substances that

the plaintiff may have been exposed to could have caused dermatitis; that self-medication by the plaintiff did cause him inflammation; that the plaintiff's condition could have been caused by self-medication; that it is possible that the plaintiff's self-medication prior to June 6, 1960, caused the inflammation which he had on June 6, 1960; and that it is conjecture and speculation to say that self-medication did not cause the plaintiff's condition.

Dr. Dunlap also testified that the plaintiff had consulted him on April 21, 1960, at which time the skin over his ankles was inflamed; and that he had seen the plaintiff on two or three other occasions when the plaintiff was suffering from a dermatitis caused by an insect spray.

There was also evidence that in November or December of 1959, the plaintiff wore a handkerchief around his neck because it was "broke out" at that time; that 4 or 5 days before any work was done on the roof, the plaintiff had one of his legs wrapped in a towel which was saturated with something that smelled like liniment; and that at this time the backs of the plaintiff's hands seemed to be sore.

The burden of proof is on the plaintiff to establish that his injury was the result of an accident arising out of and in the course of his employment. An injury arises out of an employment when there is a reasonable causal connection between the conditions under which the work is required to be performed and the injury received. Speas v. Boone County, 119 Neb. 58, 227 N. W. 87.

An analysis of the evidence in this case discloses that the plaintiff failed to prove that the dermatitis arose out of the employment. The evidence is that it may have been caused by the roofing cement or that it may have been caused by self-medication or some other substance to which the plaintiff was exposed. This is not sufficient.

An award of compensation in a workmen's compensation case may not be based upon possibilities, probabilities, or speculative evidence. Hladky v. Omaha Body & Equipment Co., 172 Neb. 197, 109 N. W. 2d 111.

Upon a review of the evidence de novo, we conclude that the evidence was not sufficient to satisfy the burden of proof. The judgment of the district court is correct and it is affirmed.

AFFIRMED.

SIMMONS, C. J., participating on briefs.