WINIFRED HULA, APPELLANT, V. WALDEMAR CARL SOENNICHSEN ET AL., APPELLEES.

134 N. W. 2d 47

Filed March 19, 1965. No. 35936.

Tesar, Kirchner, Reefe & Rogers and Walter Smith, for appellant.

Cassem, Tierney, Adams & Henatsch, for appellees.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, BROWER, SMITH, and McCOWN, JJ.

BROWER, J.

This is a workmen's compensation case brought by the plaintiff Winifred Hula against the defendants Waldemar Carl Soennichsen and Mathilda Marte Soennichsen, doing business as Soennichsen's, a partnership, and The Western Casualty & Surety Company. When the defendant is mentioned herein it will refer to the partnership named.

Plaintiff, who was 67 years of age, was employed by defendant as a clerk in its store at Plattsmouth, Nebraska. She worked half days on Tuesdays through Fridays and all day Saturdays putting in a total of 32 hours for which she was compensated at the rate of 75 cents an hour, making $24 a week. The hours were arranged to keep her compensation below that requiring

a reduction in Social Security payments which she was drawing.

On October 9, 1959, about 1 o'clock, she went up on a balcony in the store building to get some draperies for a customer. With a heavy bolt of "monks" cloth which she got and had in her arms she fell over some pasteboard boxes striking herself on the bolt. She testified she was dazed and must have struck on her right side as "that is where most of the trouble has been." Going downstairs she told the only fellow employee in the store of the fall. She waited on one or two more customers and put things away in a cupboard. Then feeling nervous and shaky, she walked to her home 2 blocks away. At home she went to bed and was in bed most of the time for several days. She said her arms ached and a rib on the right front of her chest was bruised and sore. This soreness increased and a week later she went to Dr. G. O. Austria at Plattsmouth. Thereafter she saw nine doctors who treated her and whose reports and findings were introduced in evidence but who did not testify at the trial. These reports will be discussed later. She claims she is suffering from nerves, weakness in her legs and across her lower back when she tries to work or gets out and pulls weeds, that sometimes she has a twitching in her body and it feels as though needles are sticking her inside, and her right leg and hip bother her at night.

The only witness at the trial aside from the plaintiff herself was her husband, Charles Hula. He told of her coming home slowly on the day of the accident, October 9, 1959, "like she couldn't hardly walk," and as though "she was all to pieces." She went to bed and thereafter she stayed home every day, sleeping most of the time. He stated that he notices she tires easily and complains of her back hurting after pulling weeds. She does not have as brisk a step as she used to and cannot walk very far without tiring. She complains that her back and legs are weak. Before, she was full of

pep and never complained of her back, hips, or legs. Previously she did her housework and work at the store but has not worked away from home since. Plaintiff does her own housework although her husband helps her wash and carries out the clothes to dry and the papers and things to burn.

Before the plaintiff filed action she was paid $60 compensation for disability at $20 per week, the first week being deducted under the law. Her medical and travel expense was also previously paid, being $124.30.

The first hearing was before one judge of the Nebraska Workmen's Compensation Court, hereinafter referred to as the compensation court. Her petition was dismissed and she was denied further compensation.

Upon rehearing before the entire compensation court, it held plaintiff was not entitled to permanent total disability as claimed but was entitled to temporary total disability until January 8, 1960. She was allowed $20 a week for 13 weeks, credit being given for the 3 weeks previously paid. It allowed medical and travel expense in the sum of $77 in addition to the $124.30 which had been paid. Other medical expense was disallowed.

On appeal to the district court for Douglas County, a trial resulted in a judgment affirming the award in the compensation court and dismissing the appeal. A motion for a new trial was overruled and the case is brought here on appeal.

Plaintiff asserts error in the trial court's judgment in failing to find that the accident had resulted in the plaintiff being unemployable rendering her totally and permanently disabled, in finding her disability ceased January 8, 1960, and in disallowing all other medical and incidental expense.

In considering the question before us, we are restricted as far as medical evidence is concerned to the reports of the doctors together with the doctor, hospital, and drug bills which were all admitted in evidence with-

out testimony of the doctors concerning them.

The report of Dr. Austria of Plattsmouth, whom the plaintiff first consulted, is dated February 24, 1960. It shows he first examined the plaintiff October 16, 1959, when she gave a history of the accident. He reports the results of this examination, stating she complained of her chest and right side. At first the pain was not great but that in her right chest increased as time passed and was aggravated by deep breathing, bending over, and carrying things. He found no evidence of fractures or dislocations. He found a bruise and old hematoma (swelling containing blood) at the level of the seventh and eighth ribs on the right antero-lateral side. Her blood pressure appeared to be higher than normal. His diagnosis was (1) bruise contusion and hematoma right side chest over seventh rib; (2) bruise and contusion both buttocks; and (3) nutritional anemia. His prognosis was, "Should have good recovery." He prescribed analgesics and muscle relaxants, vitamin shots, application of heat to the bruised areas, and local novocain injections to tender spots in chest. The plaintiff testified the doctor also gave her hormone treatments and B-12's but she did not know what for.

Plaintiff testified she next went for examination to Dr. W. R. Hamsa at Omaha. He made his first three examinations of the plaintiff on November 16, 1959, December 17, 1959, and January 8, 1960. The report of the first examination showed a sprain of the upper thoracic spine and a traumatic trochanteric bursitis of the right hip. His report of this examination stated: "I would expect six to twelve weeks of symptoms in anyone with this type of a fall, and the presence of degenerative changes will doubtless prolong these symptoms." His report of the last of these three examinations on January 8, 1960, stated: "Examination showed a free spine for an individual of 68 years, except for slight restriction of extension. Tenderness persisted in the dorsolumbar region in midline only. The right hip was now painless.

It is my opinion that this patient was in such condition that she could return to work from the mechanical standpoint, but that her general condition would probably be the deciding factor." On May 11, 1960, another examination was made, the report thereof showing: "Examination showed tenderness of the right iliac crest in its middle one-third, that is true lateral aspect of abdominal muscle attachments, but all leg tests were negative. She was advised that orthopedic findings suggested good progress, if not full recovery, and that medical study would be advisable for her general condition."

The plaintiff states she had a kidney flareup while being treated by Dr. Hamsa and he suggested she see Dr. Harley E. Anderson for a pelvic examination. A report of Dr. Anderson dated February 26, 1960, shows he first examined the plaintiff at the behest of Dr. Hamsa on December 17, 1959, and that he saw her again February 3, 1960. She was complaining of a uterine prolapse which she had been told was due to childbearing. A pelvic examination disclosed a cystocele, a small rectocele, high blood pressure, and other ailments which the doctor did not purport to connect with the accident.

Dr. Frank J. Iwersen of Omaha reports the results after an examination on February 26, 1960, of plaintiff's chest and lower extremities including the area of the bruises related by the plaintiff. The report concluded: "It is my impression that this patient probably suffered some contusions and sprains of the muscles of the right leg and low back at the time of her injury, however, I feel that she is making a very excellent recovery and at this time has very minimal complaints and objective symptoms are negligible; there being only mild tenderness over the low back area. The patient's genital urinary and pelvic complaints have also completely cleared and she has no complaints referable to this. I would feel that the patient should have a complete recovery from this injury with no residuals."

Dr. R. W. Tyson of Murray, Nebraska, treated her for

hypertension and nervousness starting April 4, 1960, and has seen her a dozen times. His last report says he had no idea what her blood pressure was before the accident, and that specialists in Omaha had been seen in regard to her injuries and he had given no attention to that phase of her trouble.

Dr. Henry J. Lehnhoff, Jr., reports his examinations of June 3, 1960, and June 7, 1960. Plaintiff gave a history of the accident and complained of distress in the lower abdomen and nervous crying spells. His examination disclosed the cystocele and rectocele which he considered mild. Urinalysis showed the presence of pus in the urine due to chronic cystitis which was intensified by a nervous tendency but which he thought she probably could control. He stated: "I have found no permanent disability resulting from the accident. She did have some nervous stress. Her blood pressure is now controlled by the medicine Doctor Tyson gives her."

A report dated August 29, 1960, by Dr. Howard B. Hunt of Omaha states that a radiographic study of the pelvis of the plaintiff disclosed an extensive cystic rarefaction through the right acetabulum (the cup-shaped socket in the hipbone that receives the head of the thighbone) and a smaller cyst in a comparable position on the left acetabulum. The doctor does not relate his findings to the accident one way or the other.

On January 10, 1961, Dr. Hamsa reports concerning a subsequent examination on January 9, 1961, almost precisely a year after his previous examination, in which he states: "Examination shows a quite free spine without discomfort. The hips are quite free for this stocky build, but the extremes of motion of the right hip reproduces right groin discomfort. Tenderness localizes over the right postero-lateral back musculature and leg tests are negative. The chest is free." He notes, however, possible early traumatic arthritis of the right hip. Plaintiff was reexamined by him March 1 and 31, 1961. The cyst above the acetabulum of the right hip is here

first mentioned by him and he concludes: "I am unable to state whether this hip joint change antedated her accident, which occurred on 10/9/59. At that time her symptoms did not particularly mention hip pain; hence, this area was not x-rayed. However, the hip joint evidence now is sufficient to explain right hip pain persisting. The disability, however, is not measurable. Such a change is predisposed to strain or injury."

Dr. Harold N. Neu reports at length concerning his examination of the plaintiff on April 11, 1960, concluding: "It is my impression that this woman has a benign essential hypertension which probably has been existing for some time. This is suggested by the cardiac silhouette and by the marked left axis deviation of the electrocardiogram. It would be my opinion that this is completely unrelated to the fall which she had. Her condition is quite common in women of her age and is in no sense to be construed as secondary to such a fall."

On July 26, 1961, Dr. F. J. Mnuk of Omaha made a report concerning an examination of the plaintiff made July 23, 1961. The history was related by the plaintiff and he concludes: "It is my opinion that Mrs. Winifred Hula sustained injury to her right hip and back as result of this fall. From the history that she gave of being free from pain and symptoms, and having suffered no disability to her back and hip prior to this fall, I am of the opinion that the fall aggravated a pre-existing dormant conditon in her back and hip. The reports clearly indicate that the arthritic condition in her right hip is more severe than the arthritic condition in her left hip. In a back and hip of her type, injury of any kind would increase the amount of pain and extent of the arthritic condition. It is my further opinion that from the amount of involvement in the spine and hip, as shown by my examination and the X-ray reports, that Mrs. Hula will not be able to again engage in gainful employment and is totally disabled from carrying on her

previous type of endeavor." The report does not mention the cysts.

Dr. Mnuk referred the plaintiff to the X-ray department of St. Catherine's Hospital at Omaha. A report was made July 24, 1961, by James Kelly, M.D., which concludes: "Films of the dorsal, lumbar spine, pelvis and hip areas show some arthritic changes as described above. There are no changes in any area that would indicate definite previous fracture or other type of trauma."

All of the reports mentioned were from doctors selected by the plaintiff herself or from those to whom she had been referred by the doctors consulted by her except Dr. Neu and Dr. Iwersen who examined her on behalf of the defendant insurance company and Dr. Mnuk whose examination took place at the suggestion of her own counsel.

As far as the course of treatment concerning nutritional anemia, cystocele, rectocele, uterine prolapse, the cystitis or inflammation of the bladder, and the high blood pressure, the reports of the doctors completely fail to connect any of these ailments with the injury sustained by the plaintiff. Most of the reports, in fact, expressly state there was no such connection. Plaintiff nevertheless urges that any disability resulting therefrom was caused or aggravated by the accident, basing her contention almost entirely on the testimony of the plaintiff and her husband that the plaintiff had no such ailments before the accident.

Further, plaintiff claims that regardless of whether the ailments in the paragraph immediately preceding were caused or contributed to by the accident that the reports of Dr. Mnuk and Dr. Hamsa establish that she is suffering from an arthritic condition in her right hip which the fall aggravated. Dr. Hamsa's report of an examination in January 1961 does note a possible early traumatic arthritic condition of the right hip. However, he does not necessarily relate this finding to the acci-

dent now being considered. In his report of the two examinations in March 1961, he states her original symptoms did not mention this pain. He speaks of the cyst above the acetabulum and states there is sclerosis of the margins of this cyst and spurring above at the edge of the acetabulum, which condition he states is quite old and is at least of 2 or 3 years' duration. He adds that the disability is not measurable. After an earlier examination on May 11, 1960, almost a year earlier, he had found the right back and leg tests negative.

The report of Dr. Mnuk alone relates the condition he diagnoses to the accident related to him by the plaintiff. The report is based on an examination made more than a year and 9 months after the accident. It is significant that his examination was suggested by the plaintiff's counsel and took place 4 days before the trial before the whole compensation court and was reported the day before. It does not mention the cysts which had been discovered by the other doctors. Moreover, the report of the physician at St. Catherine's Hospital concerning the X-rays there taken at Dr. Mnuk's request fails to find any changes in the area that would indicate fracture or other type of trauma. Neither is Dr. Mnuk's conclusion borne out by the reports of the other doctors.

Considering the evidence before us de novo as we are required, we conclude that the plaintiff has failed to establish that she has suffered permanent injury from the accident or an aggravation of a previous ailment therefrom.

It further appears from Dr. Hamsa's examination of January 8, 1960, that the plaintiff was then able to return to work and that the results of the accident had been alleviated.

In Spangler v. Terry Carpenter, Inc., 177 Neb. 740, 131 N. W. 2d 159, the following rules were set forth by this court: "In a workmen's compensation case disability is determinable by a consideration of employability and earning capacity.

"The burden is on a plaintiff in a workmen's compensation case to prove a right of recovery.

"The rule of liberal construction of the Workmen's Compensation Act does not apply to the evidence to support a claim.

"In a rehearing in the Nebraska Workmen's Compensation Court a de novo consideration is required."

The doctor bill of Dr. Hamsa to January 8, 1960, as well as the bills of St. Catherine's Hospital, Drs. Gross & Iwersen, and Drs. Neu & Reedy, together with certain travel expenses of the plaintiff and a portion of Dr. Austria's bill have been paid or allowed. The compensation court disallowed the other doctor bills and medical and travel expenses claimed, holding the rest were not connected with treatments related to the accident. We conclude its findings in this respect were correct.

We conclude the trial court properly applied the rules stated to the case before us and its judgment dismissing the plaintiff's petition was correct and should be and is affirmed.

AFFIRMED.