GENE R. WELKE, APPELLEE, v. CITY OF AINSWORTH,
NEBRASKA, APPELLANT.

138 N. W. 2d 808

Filed December 17, 1965.    No. 36062.

Gross, Welch, Vinardi, Kauffman & Schatz, for appellant.

Eisenstatt, Lay, Higgins & Miller, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, BROWER, SMITH, and McCOWN, JJ.

SPENCER, J.

This is a proceeding under the Nebraska Workmen's Compensation Act, filed March 17, 1964, to recover for injuries sustained on October 10, 1962. The appellee, who will hereinafter be referred to as claimant, was the chief of police of appellant city of Ainsworth, Nebraska, which will hereinafter be referred to as defendant.

The action was first tried before one of the judges of the Nebraska Workmen's Compensation Court, who entered an order dismissing the petition. Claimant elected to waive rehearing. However, defendant sought and was granted a rehearing before the workmen's compensation court sitting en banc. The full court reversed the decision of the one-man court and awarded compensation. Defendant appealed to the district court, which affirmed the award. Defendant has perfected an appeal to this court.

The claimant, who was 41 years of age and in good health at the time of the scuffle described hereafter, had been employed by the defendant about 6 years as chief of police. About 12:30 a. m. on October 10, 1962, while making a check of the residential area, claimant attempted to arrest one Lambley for disturbing the peace and intoxication. The claimant describes the encounter which took place as follows: "Q Did you do this, take him into custody, so to speak? A Yes, I placed my arm around him and went towards my patrol car with him. Q What manner did you place your arm around him? A I approached him on his left side and placed my right arm around his waist. Q What happened then? A He took a couple steps toward the patrol car and he was going quite peaceful like and at this time he reached around my neck with his left arm and squeezed me very strongly with his left arm around the neck and grasped his left

wrist with his right hand and, of course, at tremendous leverage. Q What were you doing then, were you trying to get away from him? A Yes, I struggled to try to get loose. Q All right. A But he had a terrific pressure on my neck and he is a very strong man and I could not break loose from him. Q What happened then; how long did this go on or what followed? A It is hard to determine for some moments, some seconds, at least, we struggled around and eventually fell to the ground, both of us. Q And was he holding you at that time? A Yes. Q And did you get free or what was the fact in this regard. A We fell to the ground and thrashed around; he was actually choking me and I couldn't get my breath and I managed to get leverage on my elbow and loosened his grip enough so I could breathe and I told him that he was being very foolish that my hands were free and I could, if necessary, shoot him if I had to get loose and he released me then. Q Did you take him to the station? A We both got up and I told him to come along peacefully and he called me some obsene (sic) names and made a run for me and at that time I had retrieved my flashlight from the ground or still had it in my hand, I don't remember, but I hit him with the flashlight I had in my hand. Q Did that subdue him? A Yes, he immediately went down and I put handcuffs on him."

Claimant testified his neck was very tender, sore, and stiff for a day or two, and then began to get better. Sometime later he had some pain in his left shoulder. On October 22, 1962, he was hospitalized for pneumonia and was dismissed on October 30, 1962. Two days prior to dismissal he complained to his family doctor about a pain in the left shoulder. On November 29, 1962, he again consulted his doctor about the pain in the shoulder. The doctor assumed it to be arthritic in nature and recommended heat, rest, and ultrasonic treatment. The pain was intermittent. It would persist for 3 or 4 days and then would go away for several days. Plaintiff con-

sulted the doctor again on March 28, 1963. Thereafter the pain kept recurring and became more extensive, extending down into the arm, elbow, and hand area, and two of his fingers developed a numbness.

In the latter part of May 1963, Doctor Floyd Shiffermiller, an associate of claimant's family doctor, took some X-rays of the neck area, hospitalized claimant, and placed him in traction for 6 days. The X-rays revealed a decreased joint space between the fifth and sixth cervical vertebrae, with degenerative changes of disk and the spurring of the fifth and sixth vertebral bodies. When Doctor Shiffermiller's treatment was ineffectual, he referred claimant to Doctor Dwight W. Burney, a specialist in orthopedic surgery in Omaha, who examined him June 12, 1963. Doctor Burney thought claimant had a seventh cervical nerve root compression on the left, probably due to a herniated sixth cervical disk. Doctor Burney recommended that claimant consult a neurosurgeon in Omaha, Doctor Kenneth M. Browne.

Doctor Browne recommended that claimant enter the hospital for further studies. On July 17, 1963, Doctor Browne did a myelogram which tended to confirm the diagnosis of a herniated disk. Because of the severe pain and prolonged disability, Doctor Browne recommended surgery, and on July 18, 1963, performed a cervical laminectomy operation and removed the herniated disk. The operative report of the doctor notes that when the nerve was retracted, " '* * * two rather large pieces of loose fibrocartilage were found and removed.' " It was the doctor's testimony: "A Normally, the fibrocartilage or center part of the disk is securely attached to other ligaments in the center of the disk. In this case, they had slipped underneath the disk and outside of the disk. Q In other words, they were broken off from their usual position; is that correct? A Yes." Doctor Browne also testified that the claimant had a 10 to 15 percent permanent partial disability as the result of the herniation of the disk.

The defendant produced no witnesses and both parties rested at the close of claimant's case. The workmen's compensation court allowed a recovery for 13 1/7 weeks for temporary total disability and for 286 6/7 weeks for a 12½ percent permanent partial disability to the body as a whole.

Defendant lists 11 assignments of error, but restricts its argument to two of them: (1) Was the claimant's claim barred by the 1-year statute of limitations provided by section 48-137, R. S. Supp., 1963; and (2) did the claimant meet the burden of proving that he sustained a compensable injury in the course and scope of his employment?

Admittedly, the scuffle involved was more than 1 year before the filing of the petition herein. The question in this case is, was the injury sustained on October 10, 1962, of a latent and progressive nature sufficient to extend the filing date to 1 year from the time that claimant obtained knowledge that a compensable disability resulted from the occurrence on October 10, 1962?

The evidence is conclusive that claimant's first symptoms were a sore and tender neck which developed to a gradual pain in the shoulder, arm, elbow, and hand. This eventually produced the intense pain which resulted in the surgical procedure. It was the early impression of the family doctor that the pains were of an arthritic nature. His associate, as late as May 1963, felt that the complaints were probably due to the reduced space between the fifth and sixth cervical vertebrae and the spurring of the vertebral bodies, and X-ray studies tended to confirm this diagnosis. It was not until the examination in June 1963, that the correct diagnosis was made and the traumatic connection became a possibility. The logical conclusion is that the herniation of the disk in this instance was a latent and obscure medical condition which did not become apparent until the diagnostic skill of a specialist was secured. Under the circumstances, the claimant cannot be held to have known

the probable compensable character of the injury sustained October 10, 1962, until June 1963.

This clearly is a situation within the rule of Astuto v. Ray Gould Co., 123 Neb. 138, 242 N. W. 375, in which we stated: "If an employee suffers an injury, which appears to be slight, but which is progressive in its course, and which several physicians were unable to correctly diagnose, his failure to file claim, or bring suit within the time limited by law, will not defeat his right to recovery, if he gave notice and commenced action within the statutory period after he had knowledge that compensable disability resulted from the original accident." See, also, Keenan v. Consumers Public Power Dist., 152 Neb. 54, 40 N. W. 2d 261.

The second objection raises the question as to whether the medical testimony is sufficient to establish causation. The only medical witnesses produced were those of the claimant. Defendant relies entirely on its cross-examination of the claimant's medical witnesses and its interpretation of claimant's medical testimony to support its contention that the claimant has not sustained his burden of proof on causation.

Doctor Browne, in response to a hypothetical question, testified: "Well, it is my opinion that an injury described by the patient could have caused the condition that has been described in the testimony." Doctor Browne was not permitted to answer a question as to whether the pieces of fibrocartilage which were removed could be broken off without a traumatic episode, and no offer of proof was made. Doctor Browne did testify that the finding of the loose fibrocartilage was an abnormal one.

Doctor Burney testified as follows: "Do you have an opinion, based on reasonable medical certainty, whether a compressed cervical nerve was actually related to the events which surrounded the arrest and grasping in the incident that was described on October 10, 1962? * * * I would feel that the scuffle described could initiate the

train of events that resulted in the compression of the nerve. Q * * * And that is based on reasonable medical certainty, Doctor? * * * Yes."

The medical report of Doctor Floyd Shiffermiller was received in evidence by agreement but over an objection by defendant as to its materiality. Doctor Shiffermiller stated, relative to claimant's disability: "In my opinion his injury and resultant disability was probably due to a scuffle he had in October of 1962, * * *."

The rule is well established in this jurisdiction that a workmen's compensation award cannot be based on possibility or speculation and if an inference favorable to the claimant can only be reached on the basis thereof, then he cannot recover. Klentz v. Transamerican Freightlines, Inc., 173 Neb. 53, 112 N. W. 2d 405. If a decision herein depended solely upon the testimony of Doctor Browne and Doctor Burney, it would have to be for the defendant within the ambit of this rule. The testimony of these two doctors, however, must be considered in conjunction with the opinion of Doctor Shiffermiller, who gave it as his opinion that the disability was probably due to the scuffle.

"Probably" is defined by Webster's New International Dictionary (2d Ed., Unabridged), p. 1971, as follows: "Reasonably; credibly; presumably. In all probability; very likely; * * *." The definition of "Probably" found in Black's Law Dictionary (4th Ed.), p. 1365, is: "In all probability; so far as the evidence shows; presumably; likely."

The language used by Doctor Shiffermiller is as definite as a doctor can be without giving a positive opinion that the scuffle caused the injury. He is familiar with the probabilities and selects the cause which within his range of experience he has reason to believe is the cause of the disability. In the area of certain disabilities it is impossible for a reputable doctor to testify with absolute certainty that one cause and one cause alone is the reason for the disability. Medical diagnosis is not that

exact a science. Even though in most instances a certain result may follow, to be accurate the medical expert hedges by the use of the words "probably due."

To require a greater degree of proof in a workmen's compensation case than we would require in a tort action is, to say the least, thwarting the basic purpose of the workmen's compensation statute. We believe the words "probably due" as used by Doctor Shiffermiller, read in context, indicate his best judgment to be that the injury sustained in the scuffle was the cause of the disability. In reaching this conclusion, we are not unmindful of the fact that on many occasions we have said that an award of compensation in a workmen's compensation case may not be based on possibility, *probability,* or speculative evidence. See Seymour v. Journal-Star Printing Co., 174 Neb. 150, 116 N. W. 2d 297. We have reviewed these cases, and this language is usually used where the proof of the accident is in question, but also on many occasions when there is no question as to the accident but one as to causation, which is the situation present herein. We have determined that the decisions would have been the same in every case if we had said the award "may not be based on possibilities or speculative evidence." As we said in one of those cases, Schwabauer v. State, 147 Neb. 620, 24 N. W. 2d 431: "If a claimant has adduced competent evidence having probative value which preponderantly convinces the trier or triers of the fact that claimant had an accident and incurred a disability arising out of and in the course of his employment, notwithstanding the trier or triers of the fact may recognize a possibility or even a probability that this was not true, an award of compensation thereon is proper and on appeal therefrom must be sustained."

So far as we have been able to determine on the element of causation without exhaustive research, the word "probabilities" came to be coupled with possibilities in our compensation law in Bartlett v. Eaton, 123 Neb. 599, 243 N. W. 772. It came into our law from Standard Oil

Co. v. Industrial Commission, 339 Ill. 252, 171 N. E.
165. The holding in that case, however, was clarified
by the Illinois court in Carson-Payson Co. v. Industrial
Commission, 340 Ill. 632, 173 N. E. 184, 2 years before the
opinion in Bartlett v. Eaton, *supra*, was filed. We quote
from that case as follows: "But although the onus of
proving that the injury arose both 'out of' and 'in the
course of' the employment rests upon the applicant, these
essentials may be inferred when the facts proved justify
the inference. If the facts proved give rise to conflicting
inferences of equal degrees of probability, so that the
choice between them is mere matter of conjecture, then
the applicant fails to prove his case; but where the known
facts are not equally consistent, where there is ground
for comparing and balancing probabilities at their re-
spective value, and where the more probable conclusion
is that for which the applicant contends, the arbitrator
is justified in drawing an inference in claimant's favor."

In Bartlett v. Eaton, *supra*, the doctor testified that at
most there was only a slight possibility of any causal
connection between the injury and the alleged accident,
so that the use of the word "probabilities" in that case
on the element of causation is at best dicta. So far as
we have been able to determine, our application over
the years has not been much different from that applied
by the Illinois court in Carson-Payson Co. v. Industrial
Commission, *supra*.

To recover in a workmen's compensation case a claim-
ant must offer proof which preponderates in his favor
on each of the indispensable elements of his claim. Seger
v. Keating Implement Co., 157 Neb. 560, 60 N. W. 2d
598. Where the testimony gives rise to conflicting in-
ferences of equal degree of probability so that the choice
between them is a mere matter of conjecture, a compen-
sation award cannot be sustained. Where, however, the
inferences are not equally consistent and the more prob-
able conclusion is that for which the claimant contends,

then the claimant sustains his burden of proof on the element involved.

Considering this record de novo in this court as we are required to do, Klentz v. Transamerican Freight-lines, Inc., 173 Neb. 53, 112 N. W. 2d 405, we reach the same conclusion as the district court and the workmen's compensation court sitting en banc.

The judgment of the district court is correct and it is affirmed. Plaintiff's attorneys are allowed a fee of $500 for their services in this court. § 48-125, R. R. S. 1943.

AFFIRMED.

CARTER, J., dissenting.

I do not agree with that part of the majority opinion which holds that the evidence was sufficient to sustain a recovery of benefits under the Workmen's Compensation Act. It has been the rule in this jurisdiction that the Workmen's Compensation Act will be liberally construed to accomplish its beneficent purposes but the evidence must show by a preponderance that the accident caused the injury.

The evidence supports a finding that claimant sustained an accident arising out of and in the course of his employment on October 10, 1962. It will likewise sustain a finding that claimant first discovered that he had a herniated disk in June 1963, some 8 months after the accident. While the conclusion is very questionable, I shall assume that his claimed compensable injury was latent from October 10, 1962, to June 12, 1963, the date of discovery.

This court has held many times that the evidence must show that the accident caused the claimed injury. Hula v. Soennichsen, 178 Neb. 484, 134 N. W. 2d 47; Spangler v. Terry Carpenter, Inc., 177 Neb. 740, 131 N. W. 2d 159; Graber v. Scheer, 173 Neb. 552, 114 N. W. 2d 13.

The evidence in this case is as follows: On October 10, 1962, claimant was the chief of police of the city of Ainsworth. During the night on that date while making an

arrest of an intoxicated person the latter grasped the claimant around the neck from which claimant had difficulty in extricating himself. The next morning he had some pain and stiffness in the neck which continued for 7 or 8 days. From October 22, 1962, to October 30, 1962, claimant was confined to a hospital with an attack of pneumonia. Two days before his release he felt some pain in the left shoulder at the arm socket. This pain continued intermittently with increasing intensity. The attending physician referred claimant to Dr. Dwight W. Burney, an orthopedic surgeon, who examined him on June 12, 1963. Dr. Burney diagnosed claimant's ailment as a seventh cervical nerve root compression on the left, probably due to a herniated sixth cervical disk. Claimant was referred to Dr. Kenneth M. Browne, a neurosurgeon, who corrected the trouble by an operation. The operation confirmed Dr. Burney's diagnosis.

Dr. Browne testified that the scuffle on October 10, 1962, "could have caused the condition." Dr. Burney testified "that the scuffle described could initiate the train of events that resulted in the compression of the nerve." He further testified that one could have a herniated disk without any severe injury. On cross-examination he was asked and answered the following questions: "Q And it has been not uncommon to have patients suffer with herniated cervical disks who have no history at all of outside trauma? A That is correct. Q It could be caused by that, of course, as you stated in your testimony. A That is correct, yes. Q And it could be caused by other reasons? A Yes." I submit that the effect of this evidence is that the herniated disk could have been caused by the scuffle or it could have resulted from other causes. The evidence is subject to no other reasonable interpretation other than that the cause was not determinable and accounts for the evidence of the physicians that the scuffle could have initiated the train of events resulting in the herniated disk

and their unwillingness to say that the scuffle did cause it, even as a matter of opinion.

There is no evidence in this record, opinion or otherwise, that the herniated disk resulted from the accident that occurred 8 months previously. There is simply nothing to support a medical conclusion that the scuffle caused the herniated disk and, the initiating causes of herniated disks being so multitudinous, an opinion where there had been an 8-month's lapse of time with only intermittent symptoms of pain would be pure speculation at the most.

There is a letter in the record received over objection as to materiality signed by the attending physician in which he states: "In my opinion his injury and resultant disability was probably due to a scuffle he had in October of 1962, and probably will have no future disability." The attending physician did not testify in the case. The statement was not sworn to and cross-examination was not possible. The statement is purely an extrajudicial one. The use of the word "probably," in connection with the scuffle as a cause, is clearly used as synonymous with "possibly." His statement is a pure conclusion not based on any factual situation that supports the word "probably" as evidence of a medical opinion that the scuffle did cause the injury. The medical testimony, considered as a whole, preponderates in favor of the conclusion that there was no way to determine whether or not the accident precipitated the injury. Certainly a general use of the word "probably," not based on medical testimony or circumstances supporting its use, will not support an award of compensation as this court has many times said.

It has been the rule in this jurisdiction since the enactment of our Workmen's Compensation Act that causal connection between the accident and the injury must be established by evidence, and that compensation awards cannot be based on possibilities, probabilities, or speculative evidence. Omaha & C. B. St. Ry. Co. v. Johnson,

109 Neb. 526, 191 N. W. 691; Bartlett v. Eaton, 123 Neb. 599, 243 N. W. 772; Huffman v. Great Western Sugar Co., 125 Neb. 302, 250 N. W. 70; Saxton v. Sinclair Refining Co., 125 Neb. 468, 250 N. W. 655; Milton v. City of Gordon, 129 Neb. 888, 263 N. W. 208; Price v. Burlington Refrigerator Express Co., 131 Neb. 657, 269 N. W. 425; Dennehy v. Lincoln Steel Works, 136 Neb. 269, 285 N. W. 590; Towner v. Western Contracting Corp., 164 Neb. 235, 82 N. W. 2d 253; Snowardt v. City of Kimball, 174 Neb. 294, 117 N. W. 2d 543; Hula v. Soennichsen, *supra.*

In Omaha & C. B. St. Ry. Co. v. Johnson, *supra,* we said: "The plaintiff must not merely ask the court to guess that the original injury was the cause of death, nor merely that it is probable it was, but she must either prove it by evidence or by legitimate inference to be drawn from the facts which are actually made to appear."

In Bartlett v. Eaton, *supra,* the court quoted the following with approval from Standard Oil Co. v. Industrial Commission, 339 Ill. 252, 171 N. E. 165: "Liability under the compensation act cannot rest upon the imagination, speculation or conjecture or upon a choice between two views equally compatible with the evidence, but must be based upon facts established by a preponderance of the evidence. * * * Awards for compensation cannot be based upon possibilities or probabilities but must be based upon sufficient evidence showing that the claimant has incurred a disability arising out of and in the course of his employment." This court has consistently adhered to this holding.

In Saxton v. Sinclair Refining Co., *supra,* this court said: "Deplorable as it is that a boy of so much early promise has become the victim of schizophrenia, the rule must go further. The burden of proof is upon him, and in order to compel compensation from his employer he must prove by a preponderance of the evidence that there was a direct causal connection between his disorder

and his automobile injury. Nor can such proof be made upon possibilities or even probabilities."

In Milton v. City of Gordon, *supra,* this court stated: "The evidence of the medical experts of both parties concedes that there are many other ways that the pre-existing condition could have been lighted up besides the one contended for by appellant. After a consideration of the whole evidence, we come to the conclusion that a decree for appellant, if one could be granted, would have to be based on speculation and probability. The evidence shows that appellant's contention that the deceased was injured by striking the steering wheel of his car is based upon the possibility that it could have happened at that time and place or the probability that it did occur as alleged. This court has held many times that awards of compensation cannot be based on possibility, probability, speculation or conjecture."

This court in denying a claim for compensation in Price v. Burlington Refrigerator Express Co., *supra,* said this: "While expert testimony was produced to the effect that trauma could produce the condition with which Price was afflicted, there is no evidence that such was the fact."

The majority relies on refinements of definition of the word "probable." It is a word of common meaning and has been applied over the years in accordance with common usage. Its meaning in our previous cases has been made clear by its application to the Workmen's Compensation Act. It is most often used as a synonym for possibility and is subject to no other meaning except when supported by evidence from which a conclusion can be drawn that it was intended as medical evidence of cause and effect. There is neither medical evidence nor circumstances that warrants any such usage here. I submit that the majority opinion extends its meaning far beyond any previous holding of this court and has the effect of vesting this court with authority to supply causal connection between an accident and an injury

when the evidence fails to establish it. In this case the evidence shows that the accident could have caused the injury and that it could have been initiated by many other causes of equal degree of probability. Under such a situation the initiating cause is conjectural and speculative, and is insufficient to sustain an award of compensation. The effect of the opinion is to place the burden upon the employer to eliminate all possibilities, probabilities, and speculation in order to establish a defense, when the statute requires a claimant to establish by a preponderance of the evidence every essential fact necessary to sustain an award.

Cases from a foreign jurisdiction are relied upon to support the affirmance. Workmen's compensation statutes and their interpretations vary in all the states and are for that reason of little authoritative force. The issues in this case have been decided many times by this court, making it unnecessary to cite cases other than our own. As the cases cited show, our interpretation on the use of possibility, probability, and speculation as evidence is of long standing and has met with apparent legislative approval. This court has recently held that a change of meaning under such circumstances is for the Legislature and not the courts. Bowers v. Maire, *ante* p. 239, 137 N. W. 2d 796. It appears to me that there should be some consistency in determining what is legislative and what is judicial, and that unpredictability in this field should be removed.

WHITE, C. J., and BROWER, J., concur in this dissent.